Thomas Marc Litton (SBN 119985)
tlitton@nydclaw.com
**SANFORD WITTELS & HEISLER, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone:  (415) 421-4774
Facsimile:  (415) 421-4784

Steven L. Wittels (*pro hac vice*)
swittels@nydclaw.com
Jeremy Heisler (*pro hac vice*)
jheisler@nydclaw.com
**SANFORD WITTELS & HEISLER, LLP**
1350 Avenue of the Americas, 31st Floor
New York, NY 10022
Telephone: (646) 723-2947
Facsimile: (646) 723-2948

*Attorneys for Plaintiffs Joe Lewis Luque,*
*Herman Richardson, and the Plaintiff Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **JOE LEWIS LUQUE,** *et al.,* | |
| **Plaintiffs,** | 3:09CV5885 (CRB) |
| v. | **HEARING DATE: June 25, 2010** |
| **AT&T CORP.,** *et al.,* | **TIME: 10:00 A.M.** |
| **Defendants.** | |

**PLAINTIFFS' NOTICE OF MOTION**
**FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION**
**AND ISSUANCE OF NOTICE TO THE COLLECTIVE ACTION CLASS**

PLEASE TAKE NOTICE that Plaintiffs Joe Lewis Luque and Herman Richardson, on

behalf of themselves and all others similarly situated, by their attorneys, will bring, on June 25,

2010 at 10:00 a.m. before the Honorable Charles R. Breyer, their Motion for Conditional

Collective Action Certification and Issuance of Notice to the Collective Action Class pursuant to

§ 216(b) of the Fair Labor Standards Act ("FLSA").  Simultaneously with this Motion, Plaintiffs have also filed a motion for leave to amend their Complaint to name three additional plaintiffs: Paul Jenvey, Lee Seronello, and Tom Norton.

WHEREFORE, Plaintiffs respectfully request that the Court:

1.  Conditionally certify a FLSA collective class comprised of:

All Field Managers employed by PacBell and/or AT&T in the State of California from December 2006 and thereafter.

2.  Authorize Plaintiffs to issue the attached Notice to all members of the FLSA collective class.

3.  Order Defendants to disclose contact information for all members of the class so that notice and an opportunity to opt-in may be provided to them.

In support of their Motion, Plaintiffs submit the following materials:

1.  Plaintiffs' Memorandum of Law In Support of Motion for Conditional Collective Action Certification and Issuance of Notice to the Collective Class;

2.  Declaration of Jeremy Heisler, Esq.;

3.  Declarations of 18 AT&T Corp. and Pacific Bell Telephone Co. (collectively "AT&T/PacBell") Field Managers;

4.  AT&T/PacBell corporate documents;

5.  Plaintiffs' Proposed Notice of Court Certification of Collective Action; and,

6.  Proposed Order granting Plaintiffs' Motion.

Date: May 6, 2010
      San Francisco, California

By:        /s/ Thomas Marc Litton

Thomas Marc Litton (SBN 119985)
tlitton@nydclaw.com
**SANFORD WITTELS & HEISLER, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 421-4774
Facsimile: (415) 421-4784

Steven L. Wittels (*pro hac vice*)
swittels@nydclaw.com
Jeremy Heisler (*pro hac vice*)
jheisler@nydclaw.com
**SANFORD WITTELS & HEISLER, LLP**
1350 Avenue of the Americas, 31st Floor
New York, NY 10022
Telephone: (646) 723-2947
Facsimile: (646) 723-2948

Michael Ram, CA Bar No. 104805
mram@ramolson.com
Karl Olson, CA Bar. No. 104760
kolson@ramolson.com
**RAM & OLSON LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 433-4949
Facsimile: (415) 433-7311

Edmond Clark (*pro hac vice*)
Eclarkmadisonlaw.@aol.com
**LAW OFFICE OF EDMOND CLARK**
83 Scotland Avenue
Madison, CT 06443-2501
Telephone: (203) 245-4602
Fax: (203) 245-9734

*Attorneys for Plaintiffs Joe Lewis Luque,
Herman Richardson, and the Plaintiff Class*

Thomas Marc Litton (SBN 119985)
tlitton@nydclaw.com
**SANFORD WITTELS & HEISLER, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone:  (415) 421-4774
Facsimile:  (415) 421-4784

Steven L. Wittels (*pro hac vice*)
swittels@nydclaw.com
Jeremy Heisler (*pro hac vice*)
jheisler@nydclaw.com
**SANFORD WITTELS & HEISLER, LLP**
1350 Avenue of the Americas, 31st Floor
New York, NY 10022
Telephone: (646) 723-2947
Facsimile: (646) 723-2948

*Attorneys for Plaintiffs Joe Lewis Luque,*
*Herman Richardson, and the Plaintiff Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **JOE LEWIS LUQUE,** *et al.,* | |
| **Plaintiffs,** | **3:09CV5885 (CRB)** |
| **v.** | **HEARING DATE: June 25, 2010** |
| **AT&T CORP.,** *et al.,* | **TIME: 10:00 A.M.** |
| **Defendants.** | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION**
**FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION**
**AND ISSUANCE OF NOTICE TO THE COLLECTIVE ACTION CLASS**

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ................................................................................................ iii

I.    PRELIMINARY STATEMENT ................................................................................ 1

II.   FACTUAL BACKGROUND ..................................................................................... 3

    A.   Overview of AT&T/PacBell's Field Managers ................................................. 3

    B.   The Proposed FLSA Collective Class of Field Managers ............................... 4

    C.   Field Managers Work Long Hours
        But Are Denied Overtime Wages by AT&T/PacBell ....................................... 5

    D.   The Job Duties of Field Managers .................................................................... 6

        1.   Field Managers Have Little, If Any, Authority Over Technicians ................. 6

        2.   Field Managers Do Not Determine Technician Assignments ........................ 7

        3.   Field Managers Do Not Provide Guidance to Technicians in the Field ......... 8

        4.   Field Managers Perform Basic Quality and Safety Inspections of
            Technicians ..................................................................................................... 8

        5.   Field Managers Spend a Majority of their Time Completing
            Basic Paperwork ............................................................................................ 9

        6.   The Jobs of Field Managers are Highly Regimented ................................... 10

III.  ARGUMENT ........................................................................................................... 11

    THE COURT SHOULD GRANT CONDITIONAL COLLECTIVE
    ACTION CERTIFICATION ..................................................................................... 11

    A.   The Standard For Certification Of A FLSA Conditional Collective Action Is
        Lenient and Courts Routinely Order Conditional Certification ..................... 12

        1.   To Certify a Collective Action, Plaintiffs Must Show that All
            Members of the Class Are "Similarly Situated" ......................................... 12

        2.   To Show That Class Members Are "Similarly Situated",
            Plaintiffs Need Only Demonstrate That They Are All Subject To
            A Single Illegal Policy and Share Similar Job Duties ................................. 13

B.  Plaintiffs' Evidentiary Showing Easily Satisfies the Lenient Standard to
     Conditionally Certify this Case as a Collective Action...............................................17

     1.  Field Managers Are Subject To A Single Illegal Policy
          By Being Misclassified As Exempt Employees And
          Denied Overtime Wages................................................................................ 18

     2.  Field Managers Share Similar Job Duties ....................................................... 21

C.  The Court Should Authorize the Issuance of Notice to All Members
     of the Proposed Class and Direct Defendants to Provide Their Names
     and Addresses So That Notice May Be Sent ............................................................. 21

IV.  CONCLUSION....................................................................................................................... 22

1

# **TABLE OF AUTHORITIES**

2

3 *CASES* *Page*

4 *Adams v. Inter-Con Sec. Sys., Inc.*,

5 242 F.R.D. 530 (N.D.Cal. Apr. 11, 2007).................................................................... passim

6 *Beauperthuy v. 24 Hour Fitness USA, Inc.*,

7 2007 WL 707475 (N.D.Cal. March 6, 2007)............................................................ 13, 17

8 *Beauperthuy v. 24 Hour Fitness USA, Inc.*,

9 2008 WL 793838 (N.D.Cal. March 24, 2008)...................................................... 14, 16-17

10 *Centurioni v. City and Cty. of San Francisco*,

11 2008 WL 295096 (N.D.Cal. Feb. 1, 2008) ............................................................ 15, 17

12 *Edwards v. City of Long Beach*,

13 467 F.Supp.2d 986 (C.D.Cal. 2006) ............................................................................ 17

14 *Escobar v. Whiteside Constr. Corp.*,

15 2008 WL 3915715 (N.D.Cal. Aug. 21, 2008) ............................................................ 16

16 *Gerlach v. Wells Fargo & Co.*,

17 2006 WL 824652 (N.D.Cal. March 28, 2006)............................................................ 16

18 *Gil v. Solectron Corp.*,

19 2009 WL 88346 (N.D.Cal. Jan. 9, 2009) .......................................................... 14, 16

20 *Gilbert v. Citigroup, Inc.*,

21 2009 WL 424320 (Feb. 18, 2009)................................................................................ 16

22 *Hill v. R+L Carriers, Inc.*,

23 2010 WL 334853 (N.D.Cal. Jan. 22, 2010) ........................................................ passim

24 *Hoffman-La Roche, Inc. v. Sperling*,

25 493 U.S. 165 (1989).............................................................................. 13, 14, 22

26 *In re Wells Fargo Home Mortgage Overtime Pay Litigation*,

27 527 F.Supp.2d 1053 (N.D.Cal. Oct. 18, 2007) .......................................................... 17

28

iii

*Kairy v. SuperShuttle Int'l., Inc.,*
    2009 WL 1457971 (N.D.Cal. May 21, 2009) ................................................................ 16

*Kress v. PriceWaterhouseCoopers, LLP,*
    2009 WL 4269465 (E.D. Cal. Nov. 25, 2009) ........................................................ passim

*Labrie v UPS Supply Chain Solutions, Inc.,*
    2009 WL 723599 (N.D.Cal. Mar. 18, 2009) ............................................................... 16

*Leuthold v. Destination Am., Inc.,*
    224 F.R.D. 462 (N.D.Cal. Aug. 16, 2004) .............................................................. passim

*Lewis v. Wells Fargo & Co.,*
    669 F.Supp.2d 1124 (N.D.Cal. Oct. 26, 2009) ..................................................... 14, 16

*Lockhart v. Cty. of Los Angeles,*
    2008 WL 2757080 (C.D.Cal. July 14, 2008) ............................................................. 17

*Misra v. Decision One Mortg. Co.,*
    2008 WL 7242774 (C.D.Cal. June 23, 2008) ......................................................... 15, 17

*Mowdy v. Beneto Bulk Transp.,*
    2008 WL 901546 (N.D.Cal. March 31, 2008) ............................................................ 16

*Murillo v. Pac. Gas & Elec. Co.,*
    2010 WL 797009 (E.D.Cal. Mar. 5, 2010) ............................................................ passim

*Perkins v. Southern New England Tel. Co.,*
    669 F.Supp.2d 212 (D.Conn. 2009) .................................................................. 1, 12, 17

*Prentice v. Fund for Pub. Interest Research, Inc.,*
    2007 WL 2729187 (N.D.Cal. Sept. 18, 2007) ........................................................... 17

*Rodriguez v. SGLC, Inc.,*
    2009 WL 454613 (E.D.Cal. Feb. 5, 2009) ................................................................. 17

*Russell v. Wells Fargo & Co.,*
    2008 WL 4104212 (N.D.Cal. Sept. 3, 2008) ........................................................ 15, 16

*Stanfield v. First NLC Fin. Servs., LLC,*
    2006 WL 3190527 (N.D.Cal. Nov. 1, 2006) ............................................................. 15

iv

*Tremblay v. Chevron Stations Inc.*,

    2008 WL 2020514 (N.D.Cal. May 8, 2008) ...................................................... 16

*Vasquez v. Coast Valley Roofing, Inc.*,

    670 F.Supp.2d 1114 (E.D.Cal. 2009)............................................................. 17

*Wlotkowski v. Michigan Bell Tel. Co.*,

    2010 U.S. Dist. LEXIS 37758 (E.D.Mich. Apr. 16, 2010)................................... 12, 16, 18


***STATUTES AND MISCELLANEOUS***

29 C.F.R. § 541.100 ...........................................................................................18

29 C.F.R. § 541.200 ...........................................................................................18

29 U.S.C. § 207..................................................................................................18

29 U.S.C. § 213..................................................................................................18

29 U.S.C. § 216(b) ....................................................................................... passim

v

# I.

## **PRELIMINARY STATEMENT**

Plaintiffs Joe Lewis Luque and Herman Richardson and the opt-in collective action plaintiffs (collectively "Plaintiffs") are current and former "Field Managers" employed by Defendants AT&T Corp. ("AT&T") and the Pacific Bell Telephone Company ("PacBell") (collectively "AT&T/PacBell"). Plaintiffs bring this action under the Fair Labor Standards Act ("FLSA") on behalf of themselves and hundreds of similarly situated Field Managers in California to recover overtime wages that AT&T/PacBell unlawfully refuses to pay them under a common policy of misclassification.

With this Motion, Plaintiffs request that the Court conditionally certify this matter as a collective action pursuant to § 216(b) of the FLSA so that notice can be sent to all potential members of the class. Simultaneously with the filing of this Motion, Plaintiffs have also separately filed a motion requesting leave to amend their Complaint to name three additional Plaintiffs: Paul Jenvey, Lee Seronello, and Tom Norton.

In a related suit currently pending before the U.S. District Court of Connecticut, *Perkins v. SNET*,[1] the Court recently certified a FLSA collective action brought by Connecticut AT&T Field Managers – who have substantially similar duties and authority to the California Field Managers. The facts of *Perkins* are almost identical to that of the instant case, and the California Field Managers are misclassified by AT&T as exempt from overtime wages in the exact way as the Connecticut Field Managers.

The FLSA requires that employers pay their employees overtime wages of one and a half times the regular rate of pay for all hours worked above 40 each week. AT&T/PacBell violates this mandate by denying overtime wages to its Field Managers – employees who toil for 50, 60, and often times 70 or more hours per week in their jobs. The company maintains that this policy is lawful because Field Managers fall within the "executive" and "administrative" exemptions to the FLSA's overtime requirements.

---

[1] *Perkins v. S. New Eng. Tel. Co.*, 669 F.Supp.2d 212 (D.Conn. 2009), Ex. A to Declaration of Jeremy Heisler ("Heisler Decl.").

1  AT&T/PacBell is wrong.  Field Managers are not administrators.  They are certainly not

2  executives.  Their "manager" title is a mere corporate label divorced from reality.

3  Field Managers are really low-level clerks.  Their central role is to communicate

4  information between upper management and the technicians who go into the field to install,

5  maintain, and repair cables and other hardware that deliver the company's telephone, television,

6  and internet services.  Field Managers are also responsible for completing vast amounts of

7  routine paperwork regarding the technicians' work.  And, they conduct basic field inspections of

8  technicians using form checklists issued by the company.

9  The job duties of Field Managers exhibit none of the powers of an administrator,

10  executive, or manager.  Field Managers exercise minimal discretion or independent judgment in

11  performing their work, and do not make decisions regarding technician hiring, firing, promotion,

12  or discipline, nor do they set technician wages or schedules.  Field Managers are precisely the

13  type of employees that the FLSA is intended to protect from oppressive employers who deny

14  proper wages and overtime premiums.

15  The FLSA provides a mechanism to bring a representative action, referred to in the

16  statute as a "collective action", where, as here, the rights of numerous *"similarly situated"*

17  employees have been violated by their employer.  With this Motion, Plaintiffs move the Court to

18  certify the following class pursuant to the collective action provisions of the FLSA:

19          All Field Managers employed by PacBell and/or AT&T in the State of California from
20          December 2006 and thereafter.

21  At this early stage of the litigation where discovery has yet to begin, the Court need only

22  *conditionally* certify this matter as a collective action so that notice can be sent to all potential

23  members of the proposed class who can then affirmatively "opt-in" to the suit as required by the

24  FLSA.  To show that AT&T/PacBell's Field Managers are *similarly situated* for the purposes of

25  conditional certification, Plaintiffs are required to demonstrate only that Field Managers are 1)

26  "subject to a single illegal policy, plan, or decision," and 2) share similar job duties.  This Court

27  and courts throughout the Ninth Circuit have emphasized that the bar for conditional certification

28  is lenient and typically results in certification of a representative class.

This Court should follow the reasoning of the District of Connecticut in its decision in *Perkins* and conditionally certify this matter as a collective action. The evidence provided by Plaintiffs in the 18 declarations and supporting documents submitted by AT&T/PacBell Field Managers from throughout California easily meets the lenient standard for conditional certification. The declarations and documents provide ample evidence showing that Field Managers at AT&T/PacBell are unlawfully denied overtime wages through a single illegal policy of misclassification as exempt employees. The declarations and documents also convincingly show that Field Managers throughout California have nearly uniform job duties.

Based on the abundance of evidence provided by Plaintiffs, this Court should conditionally certify the instant suit as a collective action pursuant to § 216(b) of the FLSA and accordingly (1) order Defendants to produce the names and addresses of all potential members of the proposed class and (2) allow Plaintiffs to send them the attached proposed Notice[2] of this action.

## II.

### FACTUAL BACKGROUND

#### A.  Overview of AT&T/PacBell's Field Managers

There are approximately several hundred Field Managers at AT&T/PacBell in California.[3] Officially, Field Managers at the company hold the title of Level One (or First Level) Manager.[4] Level One Managers are at the bottom of AT&T/PacBell's managerial hierarchy, and are often referred to as just one step above the bargaining unit.[5] Field Managers are a subset of Level One Managers and are given this moniker because their jobs involve working with crews of technicians that go into the "field" to install, repair, and maintain the hardware and cables that deliver AT&T/PacBell's services to its customers.[6] Field Managers at AT&T/PacBell work in a variety of different departments, or areas, such as Network Services,

---

[2] Notice of Court Certification of Collective Action ("Notice"), Ex. B to Heisler Decl.
[3] Luque Decl. at ¶ 11, Ex. C to Heisler Decl.; Jenvey Decl. at ¶ 10, Ex D. to Heisler Decl.
[4] H. Richardson Decl. at ¶ 3, Ex. E to Heisler Decl.; Norton Decl. at ¶ 3, Ex F. to Heisler Decl.
[5] Complaint at ¶ 3, Rec. Doc. 1.
[6] Seronello Decl. at ¶ 3, Ex. G to Heisler Decl.; Jimenez Decl. at ¶ 3, Ex. H to Heisler Decl.

1    Installation and Repair, Construction and Engineering, etc., but are nearly uniform in their duties

2    and responsibilities.[7]

3           Field Managers serve as a conduit to pass information between upper management and

4    the technicians in the field.[8]   They also perform clerical tasks related to the work of the

5    technicians such as filling out routine paperwork and inputting various types of data into the

6    company's computer system.[9]   In addition, Field Managers are required to conduct basic quality

7    and safety inspections of technicians using formulaic checklists issued by the company.[10]

8           Virtually all of the tasks that Field Managers perform are routine and standardized and

9    are strictly directed by the company.[11]   Field Managers exercise almost no discretion or

10   judgment in performing their work.[12]  And they have only minimal authority over the technicians

11   that they work with.[13]

12          Field Managers typically work a minimum of 50 hours per week and many of them work

13   upwards of 70 hours per week.[14]  Despite their long hours, Field Managers are not paid overtime

14   wages by AT&T/PacBell.[15]

15          **B.  The Proposed FLSA Collective Class of Field Managers**

16          Plaintiffs seek in this Motion to conditionally certify a FLSA class comprised of:

17          All Field Managers employed by PacBell and/or AT&T in the State of California from
     December 2006 and thereafter.[16]

18

19

20

21

22

---

23   [7] Complaint at ¶ 3, n. 1, Rec. Doc. 1; Exs. C-T to Heisler Decl.

24   [8] Paddock Decl. at ¶ 3, Ex. I to Heisler Decl.; T. Richardson Decl. at ¶ 3, Ex. J to Heisler Decl.

     [9] Ramos Decl. at ¶¶ 10, 19, Ex. K to Heisler Decl.; Stavert Decl. at ¶ 10, Ex. L to Heisler Decl.

25   [10]Park Decl. at ¶¶ 25-26, Ex. M to Heisler Decl.; Cathcart Decl. at ¶ 29-31, Ex. N to Heisler Decl.

26   [11] Exs. C-T to Heisler Decl.; Day in the Life Model, Ex. U to Heisler Decl.

     [12] Exs. C-T to Heisler Decl.

27   [13] *Id.*

     [14] *Id.*

28   [15] *Id.*

     [16] Complaint at ¶ 9, Rec. Doc. 1.

---

### C.  Field Managers Work Long Hours But Are Denied Overtime Wages by AT&T/PacBell

As in the *Perkins* case, Defendants AT&T/PacBell claim that they are not required to pay Field Managers overtime wages because Field Managers as a group fall within the scope of the "administrative" and "executive" exemptions to the overtime requirements of the FLSA.[17] Because of the company's uniform classification policy, even though Field Managers work 50, 60, or sometimes even more than 70 hours per week, they are not paid overtime wages.[18]

Even after leaving the office, Field Managers are required to answer calls and emails during the evening and night.[19]  They are also required to work after hours if needed from home or the office and are often asked to come in for additional weekend work.[20]  Field Managers receive no additional compensation for these additional work hours.[21]

Every few weeks, Field Managers are required to work the "duty shift."[22]  During the duty shift, Field Managers are on call 24 hours per day for a seven day period.[23]  Field Managers receive numerous calls and emails after hours during duty weeks which they must respond to, often times requiring them to go into the office in the middle of the night.[24]  Their activities are strictly regulated as they must be prepared to immediately answer calls and go out into the field at any time.[25]  During off hours, they cannot drink alcohol or venture from their territories. They are attached to their work cell phones at all times.[26]  Field Managers currently receive no additional compensation for working duty.[27]

---

[17] Answer at ¶ 2, Rec. Doc. 28.
[18] Exs. C-T to Heisler Decl.
[19] Kimball Decl. at ¶ 5, Ex. O to Heisler Decl.; Lujan Decl. at ¶ 5, Ex. P to Heisler Decl.
[20] Lujan Decl. at ¶ 7, Ex. P to Heisler Decl.; Harrison Decl. at ¶ 5, Ex. Q to Heisler Decl.
[21] Wong Decl. at ¶¶ 9-10, Ex. R to Heisler Decl.
[22] Exs. C-T to Heisler Decl.
[23] Luque Decl. at ¶ 7, Ex. C to Heisler Decl.; H. Richardson Decl. at ¶ 7, Ex. E to Heisler Decl.
[24] Norton Decl. at ¶ 7, Ex. F to Heisler Decl.; Jenvey Decl. at ¶ 6, Ex. D to Heisler Decl.; T. Richardson Decl. at ¶ 6-7, Ex. J to Heisler Decl.
[25] *Id.*
[26] Paddock Decl. at ¶ 8, Ex. I to Heisler Decl.; T. Richardson Decl. at ¶ 6, Ex. J to Heisler Decl.
[27] Exs. C-T to Heisler Decl.

### D.  The Job Duties of Field Managers

The title of "Manager" is a misnomer.  Field Managers are essentially low-level clerks who serve as the point of contact between upper management and AT&T/PacBell's technicians in the field.[28]  Their jobs are clerical in nature and highly regimented by the company.[29]  They exercise only minimal discretion and decision making in carrying out their tasks.[30]

### 1.  Field Managers Have Little, If Any, Authority Over Technicians

Field Managers do not hire or select the technicians that they work with.[31]  Rather, technicians are assigned to them by the company.[32]  Field Managers cannot fire technicians.[33] Nor can they promote technicians.[34]  Field Managers do not set technician wages or schedules.[35] Field Managers play almost no role in training the technicians that they work with.[36]  And, they have almost no ability to discipline technicians who violate rules.[37]

In their declarations, several Field Managers recounted events that highlight their lack of authority over their technicians:

*Joe Luque* described a run-in with upper level management:

> On one occasion, I tried to terminate a technician who was high on drugs on the job and who had abandoned his company vehicle.  I contacted management to inform the company of my decision and an upper-level manager responded: "Who the f--k do you think you are to fire someone?! You can't fire anyone. You don't have the authority." I was told to reinstate the technician and place him on administrative leave pending the company's investigation.  Ultimately, the company decided not to terminate the employee.[38]

---

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] Jenvey Decl. at ¶ 8, Ex. D  to Heisler Decl.; Perez Decl. at ¶ 30, Ex. S to Heisler Decl.

[32] Luque Decl. at ¶ 31, Ex. C to Heisler Decl.; H. Richardson Decl. at ¶ 28, Ex. E to Heisler Decl.

[33] Harrison Decl. at ¶ 32, Ex. Q to Heisler Decl.

[34] Stavert Decl. at ¶ 30, Ex. L to Heisler Decl.; Cathcart Decl. at ¶ 34, Ex. N to Heisler Decl.

[35] Jenvey Decl. at ¶ 8, Ex. D to Heisler Decl.

[36] Seronello Decl. at ¶ 31, Ex. G to Heisler Decl.; Jimenez Decl. at ¶ 22, Ex. H to Heisler Decl.

[37] Ramos Decl. at ¶ 30, Ex. K to Heisler Decl.; Bradley Decl. at ¶ 22, Ex. T to Heisler Decl.

[38] Luque Decl. at ¶ 33, Ex. C to Heisler Decl.

---

*Lee Seronello* also faced push back from upper management when he tried to take action against a group of technicians who violated company policy:

> In one instance in 2007, I found that several technicians were making YouTube videos that were extremely derogatory to the company. I believed they should have been terminated, but my suggestion was ignored completely. My Level Two suspended the technicians.[39]

*Maureen Lujan*:

> In one instance, when I was working in Oakland, I learned that a technician was staying at home to sleep during his midnight to 8:00 a.m. shift. He would pick up his truck from the office and bring it home and sleep until he received a call. I did not have the authority to discipline him and had to take the issue to my Level Two Manager…Within the same year, he committed another offense. He accepted a call and did not show up for it because he was drinking and fell asleep. I recommended that we terminate him. My Level Two did not follow my recommendation and instead put him on another final warning.[40]

*Paul Jenvey*:

> I once received a call from a technician who was working in an area where a wildfire had broken out. For the technician's safety, another Level One and I told him to leave the area. We were later reprimanded for giving this instruction on our own and were told that we should have contacted a Level Two instead.[41]

> [On another occasion] I tried to intervene on behalf of a technician who was placed on a Performance Improvement Plan ("PIP") based on computer-generated numerical expectations. I took up the issue with my Level Two and with HR because I did not think he should have been placed on a PIP. I argued that the technician's performance was low only because he was assigned to a remote part of the county that was very mountainous, requiring him to hike through valleys and up mountains to reach the lines he had to work on. Because of the difficult terrain, there was no way he could perform at the rate of the other technicians. The Level Two told me that the company would not allow any leeway in the PIP protocol; therefore, the technician was kept on the PIP – potentially leading to progressive discipline up to termination – despite my strong disagreement.[42]

### 2. Field Managers Do Not Determine Technician Assignments

Each morning, Field Managers receive the assignments that technicians must work on

---

[39] Seronello Decl. at ¶ 30, Ex. G to Heisler Decl.
[40] Lujan Decl. at ¶ 29, Ex. P to Heisler Decl.
[41] Jenvey Decl. at ¶ 23, Ex. D to Heisler Decl.
[42] *Id.* at ¶ 29.

from a dispatch center.[43]  Field Managers have no input into what jobs must be completed by the technicians on a given day or which technician will work on a particular assignment.[44]  All of this is done through the dispatch center prior to the assignments being transmitted to the Field Managers.[45]

When the technicians arrive to work each morning, Field Managers simply distribute the assignments as directed by the dispatch center.[46]  Only Field Managers in Construction and Engineering follow a slightly different procedure.[47]  In Construction, Field Managers receive a list of jobs from the company with completion dates and Field Managers simply distribute the jobs in order of priority to the next available technician.[48]

If a technician is absent or there is a problem in the field that requires a technician to spend more time on a job than anticipated, Field Managers do not have the authority to redistribute or rearrange the assignments.[49]  They must call the dispatch center, which then makes the needed adjustments.[50]

### 3.  Field Managers Do Not Provide Guidance To Technicians In The Field

Field Managers do not advise or provide instructions to technicians regarding their work in the field.[51]  If a technicians calls with a problem in the field, Field Managers are required to direct the call to someone with the technical knowledge to provide assistance.[52]

### 4.  Field Managers Perform Basic Quality and Safety Inspections of Technicians

Field Managers are required to perform a number of quality and safety inspections of the technicians each month.[53]  Field Managers try to go into the field for a couple of hours each day

---

[43] Park Decl. at ¶ 21, Ex. M to Heisler Decl.; Kimball Decl. at ¶ 13, Ex. O to Heisler Decl.
[44] H. Richardson Decl. at ¶ 12, Ex. E to Heisler Decl.
[45] Jimenez Decl. at ¶ 15, Ex. H to Heisler Decl.; Cathcart Decl. at ¶ 24, Ex. N to Heisler Decl.
[46] T. Richardson Decl. at ¶ 16, Ex. J to Heisler Decl.; Perez Decl. at ¶ 16, Ex. S to Heisler Decl.
[47] Norton Decl. at ¶¶ 15, 26, Ex. F to Heisler Decl.
[48] *Id.*
[49] Jenvey Decl. at ¶ 22, Ex. D to Heisler Decl.
[50] *Id.*
[51] Luque Decl. at ¶ 20, Ex. C to Heisler Decl.; H. Richardson Decl. at ¶ 18, Ex. E to Heisler Decl.
[52] *Id.*
[53] T. Richardson Decl. at ¶ 29, Ex. J to Heisler Decl.; Cathcart Decl. at ¶ 29, Ex. N to Heisler Decl.

---

1    to conduct these inspections, but often are not able to because of the overwhelming amount of

2    paperwork they must complete in the office.[54]

3           The inspections are performed using form checklists created by the company with basic

4    "yes" or "no" questions – such as whether a technician is wearing a hard hat or is strapped into a

5    telephone pole.[55]   Field Managers exercise only the most minimal discretion and judgment in

6    conducting inspections.[56]   They make observations of the technicians and simply check off the

7    appropriate box on the form, "yes" or "no," in response to rudimentary questions related to

8    quality and safety.[57]   There is no space on the forms for Field Managers to make comments or

9    record their views or opinions regarding the work of the technicians.[58]

10          **5.  Field Managers Spend A Majority Of Their Time Completing Basic**
             **Paperwork**
11

12          The bulk of an average Field Manager's work day is taken up by data entry and filling

13   out paperwork related to the work of the technicians.[59]   This involves simply transferring

14   information from the computer system onto various forms, or entering information from forms

15   into the computer system.[60]   In doing this work, Field Managers do not perform any analysis nor

16   do they provide opinions or evaluations of the work of the technicians.[61]   They merely serve as

17   clerks who record relevant data.[62]

18          For example, when technicians complete an assignment, they input certain pieces of data

19   regarding their performance into the company's computer system.[63]   Field Managers transfer this

20   performance related information from the computer system onto various forms.[64]   Field

21

22

23   _____

     [54] Park Decl. at ¶ 18, Ex. M to Heisler Decl.
24   [55] Lujan Decl. at ¶ 25, Ex. P to Heisler Decl.; Wong Decl. at ¶ 20, Ex. R to Heisler Decl.
     [56] Seronello Decl. at ¶ 27, Ex. G to Heisler Decl.; Paddock Decl. at ¶ 29, Ex. I to Heisler Decl.
25   [57] Jenvey Decl. at ¶ 32, Ex. D to Heisler Decl.; Bradley Decl. at ¶¶ 25-27, Ex. T to Heisler Decl.
     [58] Stavert Decl. at ¶ 28, Ex. L to Heisler Decl.; Harrison Decl. at ¶ 29, Ex. Q to Heisler Decl.
26   [59] Seronello Decl. at ¶ 10, Ex. G to Heisler Decl.; Park Decl. at ¶ 10, Ex. M to Heisler Decl.
     [60] Norton Decl. at ¶ 10, Ex. F to Heisler Decl.
27   [61] Wong Decl. at ¶ 18, Ex. R to Heisler Decl.
     [62] *Id.*
28   [63] Stavert Decl. at ¶ 21, Ex. L to Heisler Decl.; Bradley Decl. at ¶ 16, Ex. T to Heisler Decl.
     [64] Lujan Decl. at ¶ 16, Ex. P to Heisler Decl.; Wong Decl. at ¶ 18, Ex. R to Heisler Decl.

Managers also enter information regarding technician attendance into the computer system.[65] When disciplinary decisions regarding technicians are issued by upper management, it is the Field Managers who must fill out the relevant reports and paperwork documenting the decision.[66] Field Managers also input the results of the quality and safety inspections into the computer system.[67]   Overall, Field Managers spend the majority of their time completing these and other similar types of paperwork and data entry.[68]

### 6. The Jobs of Field Managers are Highly Regimented

As described in the attached Plaintiff Declarations, almost every aspect of the work of Field Managers is directed by the company.[69]   Field Managers are micromanaged by their supervisors and have very little authority to make decisions.[70]

*Simon Ramos* described the company's efforts to micromanage him:

> Things became stricter as we moved under AT&T and the company implemented what they call "best practice." This term means that in the 22 states the company operates in, AT&T wants everything streamlined and completely uniform. As a result, my job is highly micromanaged by my upper level managers and dictated by strict company policy.[71]

*Lee Seronello* echoed the sentiments of Ramos:

> Even if I need to visit the dentist for a mere half hour, I am required to call my supervisor for permission.

> My time is also dictated by the overwhelming number of clerical tasks I am required to complete. The company claims they do not dictate my schedule, but if tasks are not completed on time, they respond very punitively. In order to meet deadlines, all Level Ones work far more than eight hours per day.

> I am closely scrutinized and micromanaged through numerous conference calls with supervisors throughout the day. I have very little latitude to make decisions without

---

[65] H. Richardson Decl. at ¶ 16, Ex. E to Heisler Decl.; Park Decl. at ¶ 9, Ex. M to Heisler Decl.
[66] Norton Decl. at ¶ 28, Ex. F to Heisler Decl.; Park Decl. at ¶ 22, Ex. M to Heisler Decl.
[67] Norton Decl. at ¶ 22, Ex. F to Heisler Decl.; Park Decl. at ¶ 19, Ex. M to Heisler Decl.
[68] Seronello Decl. at ¶ 10, Ex. G to Heisler Decl.; Park Decl. at ¶ 10, Ex. M to Heisler Decl.
[69] Exs. C-T to Heisler Decl.
[70] *Id.*
[71] Ramos Decl. at ¶ 12, Ex. K to Heisler Decl.

---

speaking to my supervisors and have been reprimanded for making minor decisions without consulting upper management.[72]

*Patrick Cathcart*:

In my position as a Level One Manager, I have virtually no discretion or authority to make decisions. I act mainly as a messenger and am constantly being given orders by various levels of management.

The company employs various micromanaging tools, such as conference calls throughout the day during which I am given lists of orders that dictate what I should be doing at all times.[73]

*John Bradley*:

The company micromanages and tracks everything I do. I joke that they even want to know when I go to the bathroom.[74]

*Fred Perez*:

I am not at all able to manage my own time. I am at the mercy of whatever my Level Two Manager wants done or whatever someone else needs from me.

I am given orders not only by my direct supervisors, but also by the district office and many staff managers.[75]

### III.

### ARGUMENT

### THE COURT SHOULD GRANT CONDITIONAL COLLECTIVE ACTION CERTIFICATOIN

With this Motion, Plaintiffs seek conditional certification pursuant § 216(b) of the FLSA of the following class:

All Field Managers employed by PacBell and/or AT&T in the State of California from December 2006 and thereafter.

In support of their Motion, Plaintiffs provide the Court with substantial evidence showing that 1) AT&T/PacBell Field Managers throughout California share similar job duties and 2) that the

---

[72] Seronello Decl. at ¶¶ 9-11, Ex. G to Heisler Decl.
[73] Cathcart Decl. at ¶¶ 10-11, Ex. N to Heisler Decl.
[74] Bradley Decl. at ¶ 10, Ex. T to Heisler Decl.
[75] Perez Decl. at ¶¶ 11-12, Ex. S to Heisler Decl.

company applies a single illegal policy to deny all Field Managers overtime wages.   This satisfies § 216(b)'s requirements for conditional certification of Plaintiffs' proposed class.

Faced with similar facts in a related case, the U.S. District Court for the District of Connecticut recently certified a FLSA collective class of AT&T Field Managers in Connecticut who, like the Field Managers in the instant case, have brought suit against the company for failure to pay proper overtime wages.  *See Perkins v. S. New England Tel. Co.,* 669 F.Supp.2d 212 (D.Conn. 2009)(applying more stringent stage-two decertification standard).[76]  The Field Managers in *Perkins* have job duties and responsibilities almost identical to the Field Managers at AT&T/PacBell in California.  *See id.* at 214-15.  And they are denied overtime wages on the basis of the administrative and executive exemptions in the same way that the AT&T/PacBell Field Managers in California are.  *See id.*

This Court should follow the reasoning of the District of Connecticut and certify Plaintiffs' proposed collective action.  Accordingly, the Court should authorize Plaintiffs to issue the attached Notice[77] of this action to all class members.  To facilitate notice, Defendants should be ordered to provide the names and last-known addresses of these employees.

### A.  The Standard For Certification Of A FLSA Conditional Collective Action Is Lenient And Courts Routinely Order Conditional Certification

#### 1.  To Certify A Collective Action, Plaintiffs Must Show That All Members Of The Class Are "Similarly Situated"

For cases such as the instant one where multiple employees share a common cause of action against their employer under the FLSA, Congress included a collective action provision in the statute under § 216(b) so that an employee could bring suit on behalf of himself and all other *"similarly situated"* employees:

> [A]n action may be maintained against any employer in any federal or state court…by any one or more employees for and in behalf of himself and other similarly situated employees.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

---

[76]*See also Wlotkowski v. Michigan Bell Tel. Co.,* 2010 U.S. Dist. LEXIS 37758 (E.D.Mich. Apr. 16, 2010) (conditionally certifying class of AT&T Outside Planning Engineers).
[77]Notice, Ex. B to Heisler Decl.

---

29 U.S.C. § 216(b); *see also Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 167-68 (1989); *Hill v. R+L Carriers, Inc.*, 2010 WL 334853, at *6 (N.D.Cal. Jan. 22, 2010); *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 534-35 (N.D.Cal. 2007); *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466 (N.D.Cal. 2004). The purpose of the collective action procedure is to allow plaintiffs to more effectively enforce their workplace rights and to promote judicial efficiency:

> A collective action allows [employees] the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [unlawful] activity.

*Hoffman La-Roche* at 170; *see also Beauperthuy v. 24 Hour Fitness USA, Inc.*, 2007 WL 707475, at *5 (N.D.Cal. March 6, 2007) ("a proper collective action encourages judicial efficiency by addressing in a single proceeding claims of multiple plaintiffs").

To achieve certification of a class under the FLSA collective action provisions, a plaintiff must demonstrate that the members of the proposed class are "**similarly situated**." *See Hoffman-La Roche*, 493 U.S. at 167-68; *Hill*, 2010 WL 334853 at *6; *Adams,* 242 F.R.D. at 534-35; *Leuthold*, 224 F.R.D. at 466. Once a class is certified, additional individuals can join the collective action by affirmatively "opting-in" to the class by filing a written consent with the court. *See* 29 U.S.C. § 216(b); *see also Hoffman-La Roche*, 493 U.S. at 167-68; *Hill*, 2010 WL 334853 at *6; *Adams,* 242 F.R.D. at 534-35; *Leuthold*, 224 F.R.D. at 466.

> **2. To Show That Class Members Are "Similarly Situated", Plaintiffs Need Only Demonstrate That They Are All Subject To A Single Illegal Policy and Share Similar Job Duties**

District courts within the Ninth Circuit apply a two-step approach for determining whether the members of a proposed class are similarly situated for the purposes of conditional certification. *See Murillo v. Pac. Gas & Elec. Co.*, 2010 WL 797009 *2 (E.D.Cal. Mar. 5, 2010); *Hill*, 2010 WL 334853 at *6; *Kress v. PriceWaterhouseCoopers, LLP*, 2009 WL 4269465, *2 (E.D. Cal. Nov. 25, 2009); *Adams,* 242 F.R.D. at 534-35; *Leuthold*, 224 F.R.D. at 466. In the first step, known as the "notice stage," the district court determines whether to grant ***conditional*** certification by asking whether the members of the proposed class are sufficiently alike that they

1  should be notified of the action and be given the opportunity to opt-in. *See Murillo*, 2010 WL

2  797009 at *2; *Hill*, 2010 WL 334853 at *6; *Kress*, 2009 WL 4269465 at *2-3; *Adams*, 242

3  F.R.D. at 534-35; *Leuthold*, 224 F.R.D. at 466. Courts start with the first-step notice inquiry in

4  all cases where, as in the instant case, discovery has yet not been completed.[78] *See Kress*, 2009

5  WL 4269465 at *3; *Leuthold*, 224 F.R.D. at 467-68.

6        Because of § 216(b)'s affirmative opt-in requirement, courts have recognized the

7  importance of employees "receiving accurate and timely notice concerning the pendency of the

8  collective action, so that they can make informed decisions about whether to participate."

9  *Hoffman-La Roche*, 493 U.S. at 170. Accordingly, upon granting conditional certification, courts

10  generally order that notice of the action be sent to all prospective class members to give them an

11  opportunity to opt-in to the class. *See Murillo*, 2010 WL 797009 at *2; *Hill*, 2010 WL 334853 at

12  *6; *Kress*, 2009 WL 4269465 at *2; *Adams*, 242 F.R.D. at 534-35; *Leuthold*, 224 F.R.D. at 466.

13  To facilitate the issuance of notice, courts also require employers to provide to plaintiffs the

14  names and contact information of all potential members of the collective class. *See Hill*, 2010

15  WL 334853 at *6; *Adams*, 242 F.R.D. at 539-40.

16        A plaintiff's burden at the notice stage is "a lenient one." *Lewis v. Wells Fargo & Co.*,

17  669 F.Supp.2d 1124, 1128 (N.D.Cal. Oct. 26, 2009); *Beauperthuy v. 24 Hour Fitness USA, Inc.*,

18  2008 WL 793838, *5 (N.D.Cal. March 24, 2008) ("movant bears a very light burden"); *Gil v.*

19  *Solectron Corp.*, 2009 WL 88346, *2 (N.D.Cal. Jan. 9, 2009) ("fairly easy to satisfy"). "All that

20  need be shown is that some identifiable factual or legal nexus binds together the various claims

21  of the class members" or that the "plaintiffs are generally comparable to those they seek to

22  represent." *Hill*, 2010 WL 334853 at *7; *Russell v. Wells Fargo & Co.*, 2008 WL 4104212, *3

---

[78]The second step of the two-stage inquiry for certification occurs after discovery when defendants can move to decertify the collective action – if they so choose. *See Murillo*, 2010 WL 797009 at *2; *Hill*, 2010 WL 334853 at *6; *Kress*, 2009 WL 4269465 at *2; *Adams*, 242 F.R.D. at 534-35; *Leuthold*, 224 F.R.D. at 466. At that time, the court makes a factual determination about whether plaintiffs are similarly situated by weighing factors such as "(1) the disparate factual and employment settings of the individual plaintiffs, (2) the various defenses available to the defendant which appeared to be individual to each plaintiff, [and] (3) fairness and procedural considerations." *Id.*

(N.D.Cal. Sept. 3, 2008); *Centurioni v. City and Cty. of San Francisco*, 2008 WL 295096, *1 (N.D.Cal. Feb. 1, 2008); *Stanfield v. First NLC Fin. Servs., LLC*, 2006 WL 3190527, *4 (N.D.Cal. Nov. 1, 2006).    Consequently, courts usually grant conditional certification at the notice stage.  *See Adams,* 242 F.R.D. at 539; *Centurioni*, 2008 WL 295096 at *2; *Stanfield,* 2006 WL 3190527 at *4.

In most cases, conditional, or notice stage, certification requires **only** that "*plaintiffs make substantial allegations…that the putative class members were subject to a single illegal policy, plan, or decision*." *Murillo*, 2010 WL 797009 at *2; *Hill*, 2010 WL 334853 at *6; *Kress*, 2009 WL 4269465 at *2; *Adams,* 242 F.R.D. at 534-35; *Leuthold*, 224 F.R.D. at 466.  A merits inquiry is not necessary at the notice stage as "substantial allegations" of an unlawful policy are sufficient.  *See Centurioni*, 2008 WL 295096 at *2; *Adams,* 242 F.R.D. at 539; *see also Stanfield*, 2006 WL 3190527 at *4.

In cases such as the instant one alleging that an employer has misclassified employees as exempt from the overtime provisions of the FLSA, some courts in the Ninth Circuit have required plaintiffs to additionally show that the prospective class members share "similar job duties."  *See Kress*, 2009 WL 4269465 at *5; *Lewis,* 2009 WL 3517660 at *8-9.  Again, the burden is not high and a "fact-intensive inquiry is not required." *Stanfield,* 2006 WL 3190527 at *3.  To satisfy this additional requirement, a plaintiff need only offer "***some evidence***" of similarity of job duties between members of the class.  *Kress*, 2009 WL 4269465 at *7.    In other words, Plaintiffs must make a baseline showing that the potential class members have substantially similar, not identical, job duties.  *See Misra v. Decision One Mortg. Co.*, 2008 WL 7242774, *7 (C.D.Cal. June 23, 2008); *Kress*, 2009 WL 4269465 at *6; *Lewis,* 2009 WL 3517660 at *8-9.    Any non-material differences are of no consequence.  *Stanfield,* 2006 WL 3190527 at *3.[79]

---

[79]As a point of reference, the requirements for a collective action under the FLSA are not as strict as those for class action certification pursuant to Rule 23 of the Federal Rules of Civil Procedure.  *See Kress*, 2009 WL 4269465 at *2 ("Ninth Circuit's general holding is that § 216(b) differs from Rule 23"); *Hill*, 2010 WL 334853 at *6 ("Notably, collective actions under the FLSA are not subject to the requirements of Rule 23"); *Gerlach v. Wells Fargo & Co.*, 2006 WL 824652, *1-3 (N.D.Cal. March 28, 2006) ("Collective actions are not subject to rule 23 standard.").  The requisite showing of similarity of claims

Plaintiffs can use supporting declarations and documents to meet their evidentiary burden at the notice stage. *See Adams*, 242 F.R.D. at 536 ("plaintiffs must show that there is some factual basis beyond the averments in their complaint"). The burden for plaintiffs at the notice stage is so low that "[c]ourts need not consider evidence provided by defendants" in determining whether to order conditional certification. *Kress*, 2009 WL 4269465 at *3; *Lewis,* 2009 WL 3517660 at *2-3. Instead, a defendant's competing evidence only comes into play when the full factual record is available for review at the post-discovery decertification phase. *See Kress*, 2009 WL 4269465 at *3; *Lewis,* 2009 WL 3517660 at *2-3; *Wlotkowski*, 2010 U.S. Dist. LEXIS, 37758 at *17.

Courts in the Northern District of California routinely grant conditional certification of FLSA collective actions.[80]   Likewise, other district courts throughout the Ninth Circuit also commonly grant conditional certification.[81]

---

under the FLSA is considerably less stringent than the requisite showing under Rule 23. *See Hill*, 2010 WL 334853 at *6; *Russell*, 2008 WL 4104212 at *3; *Gerlach*, 2006 WL 824652 at *2 ("To now interpret similarly situated standard by simply incorporating the 'predominating' and other requirements of Rule 23 would effectively ignore Congress' directive.").

[80]*See e.g.*, *Hill*, 2010 WL 334853 at *6 (certifying conditional collective action where dispatchers showed they did not receive overtime pay, worked similar schedules, and performed similar duties); *Lewis*, 2009 WL 3517660 at *2-3 (technical support workers shared job description, were uniformly classified as exempt from overtime pay, and shared similar job duties); *Kairy v. SuperShuttle Int'l., Inc.*, 2009 WL 1457971 (N.D.Cal. May 21, 2009) (all SuperShuttle drivers treated as non-employees, performed same core job duties, and were subject to uniform standards, policies, and procedures); *Labrie v UPS Supply Chain Solutions, Inc.*, 2009 WL 723599 (N.D.Cal. Mar. 18, 2009) (drivers all misclassified as independent contractors, provided pick-up and delivery services, received assignments from dispatch center, and were subject to uniform workplace rules and policies); *Gilbert v. Citigroup, Inc.*, 2009 WL 424320 (Feb. 18, 2009) (bank employees from different locations shared similar job responsibilities, were subject to same compensation plan, and were all denied overtime wages); *Gil*, 2009 WL 88346 (employees subject to the same wage and hour violations); *Russell*, 2008 WL 4104212 (certifying conditional class and reserving determination of whether different categories of employees were distinct for second step review); *Escobar v. Whiteside Constr. Corp.*, 2008 WL 3915715 (N.D.Cal. Aug. 21, 2008) (construction workers all faced same wage and hour violations); *Tremblay v. Chevron Stations Inc.*, 2008 WL 2020514 (N.D.Cal. May 8, 2008) (uniform policy to not compensate workers who are unable to take rest break and showing of one plaintiff that overtime pay was miscalculated made it likely that other employees faced the same issue); *Mowdy v. Beneto Bulk Transp.*, 2008 WL 901546 (N.D.Cal. March 31, 2008) (company had uniform policy to deny truck drivers overtime wages and all drivers had substantially similar job requirements, pay provisions, and work schedules); *Beauperthuy*, 2008 WL 793838 (personal trainers had similar responsibilities and were all misclassified as exempt); *Centurioni*, 2008 WL 295096 (police officers showed that they were not paid proper overtime wages); *In re Wells*

### B. Plaintiffs' Evidentiary Showing Easily Satisfies The Lenient Standard To Conditionally Certify This Case As A Collective Action

The evidentiary showing made by Plaintiffs in this Motion easily satisfies the lenient requirements necessary for conditional collective action certification pursuant to § 216(b) of the FLSA. The 18 declarations and supporting documents submitted by Plaintiffs and their current or former coworkers overwhelmingly establish that AT&T/PacBell Field Managers in California: 1) are "subject to a single illegal policy, plan, or decision," and 2) share similar job duties.

The District of Connecticut's decision in *Perkins* – made on the stricter decertification or post-discovery standard – is instructive. On November 6, 2009, U.S. District Judge Janet Hall certified a collective action in *Perkins* on behalf of a class similar to the one proposed by Plaintiffs in this Motion:

> All First Level (or Level One) Managers employed by SNET in the State of Connecticut from June 2004 and thereafter, (1) to whom SNET assigned technicians; and (2) who worked as First Level Managers [in certain departments and areas]

*Perkins,* 669 F.Supp.2d at 214-15. In making this ruling, the Court recognized the low bar for certifying FLSA collective actions and emphasized that the law does not require plaintiffs to demonstrate that the members of the proposed class are exactly alike. *Id.* at 220-21. Rather, the Court explained, it is only necessary for the class members to be *similar* in their job duties and common subjection to an illegal policy:

> [A]fter examining the evidence before it, the court concludes that the named and opt-in plaintiffs are similarly situated in the areas of their jobs which are relevant to the FLSA misclassification inquiry. Plaintiffs testified to their lack of discretion in assigning work, in disciplining technicians, in hiring, firing, or promotions, and even in menial tasks such as purchasing supplies. Although there are some distinctions, the court concludes that, on

*Fargo Home Mortgage Overtime Pay Litigation*, 527 F.Supp.2d 1053 (N.D.Cal. Oct. 18, 2007) (mortgage consultants faced same policy related to compensation); *Prentice v. Fund for Pub. Interest Research, Inc.*, 2007 WL 2729187 (N.D.Cal. Sept. 18, 2007) (canvassing staff had same primary job responsibilities and were misclassified as exempt); *Stanfield*, 2006 WL 3190527 (loan officers had same job duties and all classified as exempt); *Adams*, 242 F.R.D. at 534-35 (security officers showed that they were never paid overtime); *Beauperthuy*, 2007 WL 707475; *Leuthold*, 224 F.R.D. at 466 (tour directors had never been paid overtime and experiences were common to the class).

[81] *See e.g., Murillo*, 2010 WL 797009; *Kress*, 2009 WL 4269465; *Rodriguez v. SGLC, Inc.*, 2009 WL 454613 (E.D.Cal. Feb. 5, 2009); *Vasquez v. Coast Valley Roofing, Inc.*, 670 F.Supp.2d 1114 (E.D.Cal. 2009); *Lockhart v. Cty. of Los Angeles*, 2008 WL 2757080 (C.D.Cal. July 14, 2008); *Misra*, 2008 WL 7242774; *Edwards v. City of Long Beach*, 467 F.Supp.2d 986 (C.D.Cal. 2006).

balance, the similarities outweigh the differences…and thus this factor weighs heavily in favor of certification of the collective action.

*Id.*; *see also Wlotkowski*, 2010 U.S. Dist. LEXIS, 37758 at \*17.

### 1. Field Managers Are Subject To A Single Illegal Policy By Being Misclassified As Exempt Employees And Denied Overtime Wages

§ 207(a)(1) of the FLSA requires that employers pay employees an "overtime"" wage of one and one-half times their regular rate of pay for hours worked above 40 each week.  § 213(a)(1) exempts from this overtime requirement "any employee employed in a *bona fide* executive [or] administrative…capacity." (emphasis added).   To qualify for the executive exemption, an employee must have as his "primary duty… management" and have authority to:

> [H]ire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(2), (4).  To be subject to the administrative exemption, an employee's primary duties must be "directly related to…management or general business operations" and include the "exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200(2), (3).

AT&T/PacBell maintains a single policy that classifies all Field Managers as exempt from the overtime requirements of the FLSA under the administrative and executive exemptions.  Indeed, AT&T/PacBell acknowledges this in their Answer to Plaintiffs' Complaint: "At all times relevant to this complaint, plaintiffs were properly classified as exempt under the FLSA…"[82]  And, each of the 18 Field Managers who submit declarations with this Motion confirm that they have never been paid overtime wages even though they work well over 40 hours per week.[83]

Plaintiffs have submitted ample evidence to demonstrate that this classification policy is illegal.  As explained above, to claim that AT&T/PacBell Field Managers are properly exempt, Defendants must show they (a) manage the business and (b)(i) exercise authority over other employees and/or (ii) exercise discretion and independent judgment as to matters of significance.

---

[82] Answer at ¶ 2, Rec. Doc. 28.
[83] Exs. C-T to Heisler Decl.

1    The 18 declarations and supporting documents submitted by AT&T/PacBell Field Managers

2    from throughout California unmistakably show that this is not the case.

3        Field Managers work in highly regimented jobs where everything they do is subject to a

4    myriad of rules, policies, and directives from the company.  Field Managers exercise little, if

5    any, discretion or judgment in performing their work.  Simon Ramos described his job as "highly

6    micromanaged" and "dictated by strict company policy."[84]  Lee Seronello feels that he is

7    "closely scrutinized and micromanaged" and has "very little latitude to make decisions."[85]

8    Patrick Cathcart says that he is "constantly being given orders by various levels of

9    management."[86]  John Bradley explains that the company "tracks everything I do."[87]  And, Fred

10   Perez said that he is "at the mercy of whatever my Level Two Manager wants done."[88]  Each of

11   the Field Managers who have submitted declarations describe their jobs in a similar way, highly

12   regimented and lacking in any ability to make decisions.

13       Field Managers exercise only minimal authority over the technicians that they work with.

14   They cannot hire, fire, or promote technicians and they do not even choose the technicians that

15   they work with.  They have only extremely limited involvement in disciplining technicians, in

16   part because discipline is governed by the technicians' union contract.  Although they relay

17   information regarding any incidents requiring discipline, Field Managers are mainly bystanders

18   in the actual decision-making process.  Even when a Field Manager offers an opinion on

19   discipline, upper management generally ignores it.

20       Most Field Managers do not decide what work a technician will perform on a particular

21   day.  Even those that do distribute job assignments to technicians from a pre-set list do so based

22   on strict guidelines from the company.

23       Field Managers do not provide any instruction or guidance to technicians regarding their

24   work in the field nor do they train technicians.  They do not even make meaningful evaluations

25   as a part of the quality and safety inspections that they conduct.  Inspections are done using form

26   _____

27   [84] Ramos Decl. at ¶ 12, Ex. K to Heisler Decl.
     [85] Seronello Decl. at ¶¶ 9-11, Ex. G to Heisler Decl.
28   [86] Cathcart Decl. at ¶ 10-11, Ex. N to Heisler Decl.
     [87] Bradley Decl. at ¶ 10, Ex. T to Heisler Decl.

checklists with basic "yes" or "no" questions.  Field Managers simply make basic observations and check off the appropriate box.  They do not provide comments or opinions.

The experiences of several of the AT&T/PacBell Field Managers who submitted declarations with the instant motion are illustrative of their lack of authority and ability to exercise judgment and discretion in performing their work.  For example, Joe Luque was reprimanded for attempting to fire a technician who was "high on drugs on the job and who had abandoned his company vehicle."[89]  Upon learning of Luque's actions, his Level Two Manager said, "Who the f--k do you think you are to fire someone?! You can't fire anyone. You don't have the authority."[90]  Lee Seronello could not even terminate technicians who were posting to the internet "YouTube videos that were extremely disparaging of the company."[91]  Maureen Lujan could not fire a technician who was "staying at home to sleep during his midnight to 8:00 a.m. shift" and once missed a call "because he was drinking and fell asleep."[92]

In a classic example of how tightly the jobs of Field Managers are regulated by upper management, Paul Jenvey was reprimanded for making the decision to ask a technician to leave a worksite where a wildfire had broken out nearby.[93]  He was told that he should have informed his Level Two Manager of the situation rather than handling it on his own.[94]  In another instance, Mr. Jenvey tried to intervene on behalf of a technician who received a low performance score based on company numerical metrics.[95]  Mr. Jenvey told his superiors that the technician was working in a mountainous region where he could not possibly be expected to perform at the same rate as other technicians because of the terrain he had to negotiate to get to his worksites.[96]

---

[88] Perez Decl. at ¶¶ 10-11, Ex. S to Heisler Decl.
[89] Luque Decl. at ¶ 33, Ex. C to Heisler Decl.
[90] *Id.*
[91] Seronello Decl. at ¶ 30, Ex. G to Heisler Decl.
[92] Lujan Decl. at ¶ 29, Ex. P to Heisler Decl.
[93] Jenvey Decl. at ¶ 23, Ex. D to Heisler Decl.
[94] *Id.*
[95] *Id.* at ¶ 29.
[96] *Id.*

1    Jenvey's opinions were ignored by upper management and the technician was placed on a

2    performance improvement plan.[97]

3         Field Managers are clearly not exempt administrators or executives.  Such employees

4    would have had the power to take action in situations such as the ones described above.

5    Plaintiffs have easily demonstrated that Field Managers are subject to a single illegal policy of

6    misclassification under the FLSA under which they are denied proper overtime wages.

7         **2.  Field Managers Share Similar Job Duties**

8         The declarations and supporting documents also amply demonstrate that Field Managers

9    share similar job duties.  All AT&T/PacBell Field Managers work with technicians that go into

10   the field to physically work on the cables and hardware that carry AT&T/PacBell's telephone,

11   internet, cable television, and other communication services.  The declarations clearly show that

12   Field Managers at AT&T/PacBell generally perform the same tasks and duties with respect to

13   these technicians.   All Field Managers serve as a liaison from upper management to the

14   technicians and communicate information between the two groups.  They perform data entry and

15   complete paperwork related to the work of the technicians.  And, they conduct formulaic quality

16   and safety inspections of technicians.   All of them lack discretion and authority to make

17   managerial decisions and to direct the activities of the technicians.

18        Each of the 18 declarants generally describes the same experiences as a Field Manager.[98]

19   This is more than sufficient evidence to demonstrate that Field Managers in California share

20   similar job duties for the purposes of conditional certification.

21        **C.    The Court Should Authorize the Issuance of Notice to All Members of the
22               Proposed Class and Direct Defendants to Provide Their Names and
               Addresses So That Notice May Be Sent**

23

24        Clearly there is interest among the class members in participating in this action as 61

25   AT&T/PacBell Field Managers have already opted-in by filing consent forms with the Court.[99]

26

27   _____
     [97] *Id.*
28   [98] Exs. C-T to Heisler Decl.
     [99] Heisler Decl. at ¶ 4.

1    But this represents only a small fraction of the total number of AT&T/PacBell Field Managers

2    that comprise the class.  As recognized by the Supreme Court in *Hoffman-La Roche* and by

3    numerous district courts within the Ninth Circuit, the remaining members of the class should be

4    notified of the pendency of this action and be given the opportunity to opt-in to the collective

5    class.  *See Hoffman-La Roche*, 493 U.S. at 170; *Murillo*, 2010 WL 797009 at *2; *Hill*, 2010 WL

6    334853 at *6; *Kress*, 2009 WL 4269465 at *2; *Adams,* 242 F.R.D. at 534-35; *Leuthold*, 224

7    F.R.D. at 466.

8        The issuance of notice is critical to protecting the rights of the absent Field Managers

9    since the statute of limitations continues to run on their FLSA claims until they opt-in to the

10   litigation by filing written consents to join the action.  The Court should therefore order

11   Defendants to provide to Plaintiffs the names and contact information of all members of the class

12   and authorize Plaintiffs to issue the attached Notice of Court Certification of Collective Action[100]

13   to each of these individuals.

14                                       **IV.**

15                                  **CONCLUSION**

16       For the foregoing reasons, Plaintiffs respectfully request that the Court: 1) conditionally

17   certify this suit as a collective action pursuant to § 216(b) of the FLSA; 2) order Defendants to

18   provide to Plaintiffs the names and contact information or all members of the collective class;

19   and 3) authorize Plaintiffs to send the attached Notice of Court Certification of Collective Action

20   to all members of the collective class.

21

22

23

24

25

26

27

28

---

[100] Notice, Ex. B to Heisler Decl.

Date: May 6, 2010
    San Francisco, California

By:        /s/ Thomas Marc Litton
           Thomas Marc Litton (SBN 119985)
           tlitton@nydclaw.com
           **SANFORD WITTELS & HEISLER, LLP**
           555 Montgomery Street, Suite 820
           San Francisco, CA 94111
           Telephone: (415) 421-4774
           Facsimile: (415) 421-4784

           Steven L. Wittels (*pro hac vice*)
           swittels@nydclaw.com
           Jeremy Heisler (*pro hac vice*)
           jheisler@nydclaw.com
           **SANFORD WITTELS & HEISLER, LLP**
           1350 Avenue of the Americas, 31st Floor
           New York, NY 10022
           Telephone: (646) 723-2947
           Facsimile: (646) 723-2948

           Michael Ram, CA Bar No. 104805
           mram@ramolson.com
           Karl Olson, CA Bar. No. 104760
           kolson@ramolson.com
           **RAM & OLSON LLP**
           555 Montgomery Street, Suite 820
           San Francisco, CA 94111
           Telephone: (415) 433-4949
           Facsimile: (415) 433-7311

           Edmond Clark  (*pro hac vice*)
           Eclarkmadisonlaw.@aol.com
           **LAW OFFICE OF EDMOND CLARK**
           83 Scotland Avenue
           Madison, CT 06443-2501
           Telephone: (203) 245-4602
           Fax: (203) 245-9734

           *Attorneys for Plaintiffs Joe Lewis Luque,*
           *Herman Richardson, and the Plaintiff Class*

**CERTIFICATE OF SERVICE**

I, Jeremy Heisler, hereby certify under a penalty of perjury that I served on this day, May 6, 2010, via ECF true and correct copies of the attached Plaintiffs' Notice of Motion for Conditional Collective Action Certification and Issuance of Notice to the Collective Action Class together with all attachments on counsel for Defendants.


_____/Jeremy Heisler/_____
Jeremy Heisler