IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE LEWIS LUQUE, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>AT&T CORP., et al.,<br><br>    Defendants.                    / | No. C 09-05885 CRB<br><br>**ORDER GRANTING MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION** |

    In this Fair Labor Standards Act (FLSA) case, Plaintiffs allege that Defendants Pacific Bell Telephone Co. and AT&T Corp. unlawfully deny their "Field Manager" employees overtime under a policy of misclassification. Mot. at 1. Because Plaintiffs have made an adequate showing at this preliminary stage of the case, the Court grants the Motion for Conditional Collective Action Certification. However, the Court amends the Notice that Plaintiffs propose sending to the class.

**I.    BACKGROUND**

    Plaintiffs Joe Lewis Luque and Herman Richardson and the (approximately 61, see Heisler Decl. ¶ 4) opt-in Plaintiffs are current and former Field Managers (or "Level One" Managers) at Defendants PacBell and AT&T. Mot. at 1. Plaintiffs allege that Field Managers regularly work 50, 60, or even 70 hours per week, but are not paid overtime wages. Mot. at 5. They are required to answer calls and emails at night, are often asked to come in

on weekends, and every few weeks are required to work a "duty shift," during which they are on call for 24 hours a day for seven days. Id. They receive no additional compensation for this time, however, because Defendants claim that Field Managers fall within the "executive" and "administrative" exceptions to FLSA's overtime requirements. Answer at 11 ¶ 2.

Plaintiffs allege that Field Managers are liaisons between upper management and the technicians who go out into the field to install, maintain, and repair cables and other hardware that deliver Defendants' telephone, television and internet services. Mot. at 2. There are several hundred Field Managers in California. Id. at 3. Field Managers work in several different departments, including Network Services, Installation and Repair, and Construction and Engineering. Id. at 3-4. However, according to Plaintiffs, Field Managers across California "are nearly uniform in their duties and responsibilities." Id. at 4.

Plaintiffs assert that "[t]he title 'Manager' is a misnomer," and that Field Managers are really just "low-level clerks" whose jobs are highly regimented and allow for only minimal discretion. Id. at 6. According to Plaintiffs, Field Managers do not hire, select, promote or fire the technicians they work with, and they have a minimal role in both technician training and discipline. Id. at 6. Joe Luque described in his declaration trying to terminate a technician who was high on drugs on the job and being told by upper management, "Who the f-ck do you think you are to fire someone?! You can't fire anyone. You don't have the authority." Id. (citing Luque Decl. ¶ 33, Heisler Decl. Ex. C). Paul Jenvey described in his declaration having told a technician, for safety's sake, to leave an area where a wildfire had broken out; he was later reprimanded for giving that instruction on his own and was told that he should have contacted a Level Two manager instead. Id. at 7 (citing Jenvey Decl. ¶ 23, Heisler Decl. Ex. D).

Plaintiffs further state that Field Managers, other than those in the Construction and Engineering Department,[1] do not determine technician assignments. Id. at 7-8. Instead, they receive the assignments from the dispatch center and simply distribute them as directed. Id.

---

[1] Plaintiffs assert that in the Construction and Engineering Department, Field Managers receive a list of jobs with completion dates and just distribute the jobs in the order of priority to the next available technician. Id. (citing Norton Decl. ¶¶ 15, 26, Heisler Decl. Ex. F).

2

1  at 8.  If a technician is absent or if a problem arises in the field that requires extra time, Field
2  Managers do not have the authority to rearrange assignments, but must call the dispatch
3  center, which makes the necessary adjustments.  Id.

4  Plaintiffs claim that Field Managers do not provide guidance to technicians in the
5  field, and that if a problem arises, Field Managers are required to direct the call to someone
6  else.  Id.  Although Field Managers perform monthly quality and safety inspections of the
7  technicians, Plaintiffs state that these are done using basic yes-or-no checklists, with no space
8  for them to write additional comments.  Id. at 8-9.  Plaintiffs further allege that the majority
9  of the Field Managers' time is spent doing data entry– "transferring information from the
10 computer system onto various forms, or entering information from forms into the computer
11 system," without doing any analysis or adding any opinions of their own.  Id. at 9; see
12 also Seronello Decl. ¶ 10, Heisler Decl. Ex. G; Park Decl. ¶ 10, Heisler Decl. Ex. M.

13 Finally, Plaintiffs characterize the Field Managers' jobs as "highly regimented" and
14 "micromanaged."  Id. at 10.  Simon Ramos described in his declaration AT&T's "best
15 practice" policy, under which the company wanted everything "completely uniform,"
16 resulting in his job being "highly micromanaged by [his] upper level managers and dictated
17 by strict company policy."  Id. (citing Ramos Decl. ¶ 12, Heisler Decl. Ex. K).  Patrick
18 Cathcart described in his declaration acting "mainly as a messenger" and being "given orders
19 by various levels of management."  Id. at 11 (citing Cathcart Decl. ¶¶ 10-11, Heisler Decl.
20 Ex. N).  John Bradley stated in his declaration that "[t]he company micromanages and tracks
21 everything I do.  I joke that they even want to know when I go to the bathroom."  Id. (citing
22 Bradley Decl. ¶ 10, Heisler Decl. Ex. T).

23 Based upon these facts, Plaintiffs filed a Class and Collective Action Complaint in
24 December 2009, making allegations under both the FLSA and California's Labor and Unfair
25 Competition Law.  See generally dckt. no. 1.  They have now filed a Motion for Conditional
26 Collective Action Certification.  See dckt. no. 35.  Plaintiffs ask the Court to certify a class of
27 "[all Field Managers employed by PacBell and/or AT&T in the State of California from
28 December 2006 and thereafter."  Mot. at 2.  They further ask the Court to order Defendants

3

1  to provide Plaintiffs with the names and contact information for all members of the class and
2  to authorize their proposed Notice of Court Certification of Collective Action.  Mot. at 22.

## II.     ANALYSIS

### 1.     Legal Standard

Under the FLSA, individuals may bring suit "in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).  The statute does not define "similarly situated," however, and neither has the Ninth Circuit.  See Lewis v. Wells Fargo & Co., 669 F. Supp. 2d 1124, 1127 (N.D. Cal. 2009).  Within this Circuit, to determine whether plaintiffs are similarly situated, courts take a two-step approach.  Id.

First, the court makes an initial, conditional determination of whether plaintiffs are similarly situated, "deciding whether a collective action should be certified for the purpose of sending notice to potential class members."  Id.  The initial notice stage determination uses a "lenient [standard] that typically results in certification."  Id. (citing Wynn v. Nat'l Broad. Co., Inc., 234 F. Supp. 2d 1067, 1082 (C.D. Cal. 2002)); see also Opp. at 16 (arguing only that "[a]lthough the initial 'similarly situated' inquiry is lenient, the standard 'is not a mere formality'").  Plaintiffs must simply provide "substantial allegations, supported by declarations or discovery."  Kress v. PriceWaterhouseCoopers, LLP, 263 F.R.D. 623, 627 (E.D. Cal. 2009).  Courts need not even consider evidence provided by defendants at this stage.  Id. at 628 (citing Lewis, 669 F. Supp. 2d at 1128).

Then, once discovery is complete, and usually prompted by a defendant's motion for decertification, the court makes a second determination, using a stricter standard.  Id.  At that point, the court "must make a factual determination" as to the "propriety and scope of the class," considering "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations." Leuthold v. Destination America, Inc., 224 F.R.D. 462, 467 (N.D. Cal. 2004).

Although courts occasionally skip the initial, notice stage determination, see, e.g., Basco v. Wal-Mart Stores, Inc., 2004 U.S. LEXIS 12441, at *15 (E.D. La. July 2, 2004),

1  courts in this Circuit overwhelmingly "refuse to depart from the notice stage analysis prior to
2  the close of discovery," see Kress, 263 F.R.D. at 629 (citing, among other cases, Labrie v.
3  UPS Supply Chain Solutions, Inc., 2009 WL 723599, at *3 (N.D. Cal. March 18, 2009)).
4  Chief Judge Walker discussed this issue at length in Leuthold, 224 F.R.D. at 467-68, a case
5  in which "extensive discovery [had] already taken place," concluding that it was proper to
6  begin with the first stage of certification, because (1) "[a]lthough the parties [had] filed an
7  impressive pile of declarations and deposition excerpts, it [was] unclear . . . whether a
8  complete factual record [had] been developed and presented to the court," and (2) "the two-
9  tier approach contemplates progression through the notice stage before reaching the more
10 rigorous inquiry required to maintain the class."  Here, neither party proposes that the Court
11 skip the notice stage, and despite the extensive evidence proffered by Defendants, discovery
12 is not complete.  Accordingly, this Court is at the notice stage.

### 2. Legal Standard Applied to Plaintiff's Case

The Court's current task is thus to apply the notice stage's lenient standard to Plaintiff's case.  Plaintiffs are to provide "'substantial allegations, supported by declarations or discovery, that 'the putative class members were together the victims of a single decision, policy, or plan."  Kress, 263 F.R.D. at 629.  Where, as here, a case involves a claim of misclassification, courts usually also require plaintiffs to "provide some further allegations or evidence indicating that prospective class members share similar job duties."  Id. at 629-30.

Here, a single policy applies to the whole class.  Defendants have asserted that Field Managers are not paid overtime because they fall into the administrative or executive exceptions to FLSA's overtime requirements.  See Answer at 11 ¶ 2.  FLSA exempts "any employee employed in a bona fide executive, administrative, or professional capacity."  29 U.S.C. § 213(a)(1).  The regulations define an "administrative" employee as, among other things, one "[w]hose primary duty is the performance of office . . . work directly related to the management or general business operations of the employer" and "[w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200(a).  They define an "executive" employee as, among

5

other things, one "[w]hose primary duty is management of the enterprise," "[w]ho customarily and regularly directs the work of two or more other employees," and "[w]ho has the authority to hire or fire employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a).

Plaintiffs have made substantial allegations that Field Managers are low-level clerks with little discretion or authority over the technicians they purportedly supervise, and they have proffered 18 declarations in support of those allegations. See Mot. at 19-21. Plaintiffs' assertions and evidence are inconsistent with Defendants' characterization of Field Managers as either administrators exercising discretion and independent judgment, or executives managing Defendants' enterprise and entrusted with hiring and firing the technicians with whom they work.

The remaining question is "whether plaintiff's evidence indicates that the propriety of the classification may be determined on a collective basis," Kress, 263 F.R.D. at 630, i.e., whether Plaintiffs have made an adequate showing that class members perform similar job duties. Plaintiffs need not show that the class's job duties are identical, just that they are similar. See Misra v. Decision One Mortg. Co., 2008 WL 7242774, at *7 (C.D. Cal. June 23, 2008). Plaintiffs have done so. Again, they submitted substantial allegations and 18 declarations asserting that though Field Managers work in different departments, all are liaisons between upper management and the technicians in the field, all spend the majority of their day doing data entry and paperwork, all conduct formulaic inspections and all lack the authority to truly manage the activities of their technicians. See Mot. at 6-11, 21.[2]

Defendants' arguments to the contrary are unavailing.

Defendants contend that "[a]nalysis of an employee's exempt or non-exempt status under the executive or administrative exemption . . . is a highly fact-intensive inquiry," and therefore there is no judicial efficiency gained by maintaining a collective action. Opp. at

---

[2] Plaintiffs also point to recent 30(b)(6) depositions in a related case in which AT&T admitted that its policy was to have Field Managers perform their job duties in a uniform manner across the country. See Reply at 9 (citing McKinney Dep. at 34-36, 52, 75, 103, Melzer Decl. Ex. C).

6

18-20. This might turn out to be correct. However, "[t]o the extent there may be some individualized inquiries about the level of control actually exercised [by the company], . . . individualized inquiries such as this are better to address a the second stage of certification rather than the first." Harris v. Vector Mktg. Corp., 2010 U.S. Dist. LEXIS 56110, at *16-17 (N.D. Cal. May 18, 2010) (collecting cases). See also Russell v. Wells Fargo & Co., 2008 U.S. Dist. LEXIS 78771, at *9 (N.D. Cal. Sept. 8, 2008) ("[t]he Court cannot resolve at this time the issue of whether the duties of PLE-5s are sufficiently individualized or distinct from those of PLE-3s and 4s so as to render them not similarly situated. Doing so would require the Court to evaluate the relative strength of the parties' evidence, which would not be appropriate at the first stage of collective action certification."); Misra, 2008 WL 7242774, at *7 ("'It is somewhat disingenuous . . . for Defendants to argue that they should be permitted to treat all sales representatives as one group for purposes of classifying them as exempt, but that this Court can only determine the validity of that classification by looking to the specific job duties of each individual sales representative'").

Defendants also complain that 15 of Plaintiffs' 18 declarants work in the same department (Installation & Maintenance). Opp. at 4. But there is no requirement that Plaintiffs have a representative from each department. See Russell, 2008 U.S. Dist. LEXIS 78771, at *8-10 (conditionally certifying class of employees in three positions despite only having declarations from employees in two of the positions); cf. Lewis, 669 F. Supp. 2d at 1128 ("Courts routinely grant conditional certification of multiple-job-title classes"). Moreover, Plaintiffs' 18 declarations are not a small number. See, e.g., Escobar v. Whiteside Constr. Corp., 2008 U.S. Dist. LEXIS 68439, at *11 (N.D. Cal. Aug. 21, 2008) (conditionally certifying a class based on three declarations); Harris, 2010 U.S. Dist. LEXIS 56110, at *6 ("A handful of declarations may suffice.").

Defendants submitted 30 of their own Field Manager declarations, and deposition excerpts, containing numerous examples of Field Managers exercising discretion in one way

7

or another.[3] The Court need not consider Defendants' declarations. Kress, 263 F.R.D. at 628 (citing Lewis, 669 F. Supp. 2d at 1128). In addition, "[t]he fact that a defendant submits competing declarations will not as a general rule preclude conditional certification. . . . competing declarations simply create a 'he-said-she-said' situation," and "'while [i]t may be true that the [defendant's] evidence will later negate [the plaintiff's] claims, that should not bar conditional certification at the first stage.'" Harris, 2010 U.S. Dist. LEXIS 56110, at *6-7 (citing Escobar, 2008 U.S. Dist. LEXIS 68439, at *12). Indeed, though the declarations show that some Field Managers conduct informal training, see, e.g., Baer Decl. ¶ 9, or resolve grievances under the Collective Bargaining Agreement, see, e.g., Cushing Decl. ¶ 18, or do other things Plaintiffs' declarants deny doing,[4] that does not necessarily defeat Plaintiffs' argument that the Field Managers are not executives or administrators under the FLSA. An exempt employee's "primary duty" must be exempt work. 29 C.F.R. § 541.700(a). That means that the "principal, main, major or most important duty that the employee performs" must be exempt. Id. Defendants have thus far not shown that their Field Manager declarants' primary duties are exempt work, only that they sometimes do exempt work.

Defendants further argue that a survey they commissioned is proof that Plaintiffs' claimed work experiences are not typical of other Field Managers. Opp. at 9. The Declaration of Dr. Deborah Jay details an extensive telephone study of Field Managers performed by the Field Research Corporation. See generally Jay Decl., dckt. no. 116. Dr. Jay found, for example, that 80 percent of Field Managers "said that they spend the majority . . . of their time on the following six duties: (i) analyzing and assessing the prior day's performance data; (ii) meeting with, coaching, and counseling technicians and dealing with

---

[3] Plaintiffs object to these declarations on a variety of grounds and asks the Court not to consider them. See Reply at 14-21. Even if the Court considered the declarations, they would not change the Court's holding at this stage of the case.

[4] Defendants also devote a section of their Opposition to attacking the credibility of Plaintiffs' deposition testimony. See Opp. at 31-33. The Court will not engage in credibility determinations at this time. See In re Enterprise Rent-A-Car Wage & Hour Emp't Practices Litig., 2010 U.S. Dist. LEXIS 82961, at *61 (W.D. Pa. Aug. 13, 2010).

8

disciplinary issues; (iii) monitoring technician workload and assignments; (iv) training and instructing technicians on assignments; (v) observing and assessing technician performance; and (vi) investigating complaints." Id. at 4. The Court will not consider this evidence at this stage. See Labrie, 2009 WL 723599, at *19-20 (disregarding similar study offered by Dr. Jay which "purportedly show[ed] that the 'pictures painted by [p]laintiffs,' if true, are aberrations from the norm" as "[t]his evidence is beyond the scope of this court's analysis in a first tier determination insofar as the evidence raises questions going to the merits").[5]

The Court concludes that Plaintiffs have met their very light burden. See Kress, 263 F.R.D. at 631 ("plaintiffs have provided some evidence of similarity. This suffices at this stage."). Importantly, the court reached the same conclusion in a related case in the District of Connecticut, involving AT&T Field Managers with substantially similar job duties to the Plaintiffs at bar. Perkins v. S. New England Tel. Co., 669 F. Supp. 2d 212 (D. Conn. 2009). The court in Perkins applied the more stringent post-discovery certification standard, id. at 218, and ultimately held:

> [T]he court concludes that the names and opt-in plaintiffs are similarly situated in the areas of their jobs which are relevant to the FLSA misclassification inquiry. Plaintiffs testified to their lack of discretion in assigning work, in disciplining technicians, in hiring, firing, or promotions, and even in menial tasks such as purchasing supplies. Although there are some distinctions, the court concludes that, on balance, the similarities outweigh the differences.

Id. at 220-21. The court added that while Defendants "will argue that some members of the class are exempt while others are not," "these arguments go to the merits of the plaintiffs' claims, which is not proper for the court to consider at the collective action stage." Id. at 221. Defendants have not meaningfully distinguished Perkins, arguing only that that court did not have Dr. Jay's statistical evidence, and that the case was wrongly decided. See Opp. at 33. The Court here follows Perkins, at least at this stage of the case.

### 3. Notice

Plaintiffs ask the Court to order Defendants to provide the names and contact information of all members of the class and to authorize Plaintiffs to issue their proposed

---

[5] Plaintiffs make several allegations as to the Jay study, which the Court will also not consider at this time. See Reply at 21-28.

9

Notice of Court Certification of Collective Action.  Mot. at 21-22.  The Court does so, though it amends the Notice in a few ways.

First, the Notice provides a space for the Court's signature.  See Heisler Decl. Ex. B at 2.  That is not appropriate.  See Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165, 174 (1989) ("trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action"); see also Gerlach v. Wells Fargo & Co., 2006 U.S. Dist. LEXIS 24823, at *13 (N.D. Cal. March 28, 2006) (criticizing proposed notice's inclusion of court caption and objecting to single sentence stating that "Court has taken no position on the case" being "seemingly tacked onto the end.").  The Court removes the signature line.

Second, the Notice includes a lengthy, all capital letter and bolded disclaimer at the bottom of the second page that states:

> This notice and its contents have been authorized by the Federal District Court, the Honorable Judge Charles R. Breyer.  The Court has not yet expressed any opinion about the merits of the claims asserted or the defenses raised, and you should not interpret the sending of this notice as any indication of the Court's opinion of the ultimate outcome of this case.  Please do not contact the Court or the Court clerk with questions about this lawsuit or notice.

Heisler Decl. Ex. B at 2.  While this is not a single sentence "seemingly tacked onto the end," Gerlach, 2006 U.S. Dist. LEXIS 24823, at *13, Defendants argue that it should be included on the first page of the notice.  See Opp. at 34.  The Court moves it, with a few edits, to the first page.

Third, Defendants state that the Notice "fails to advise putative class members that, if they choose to opt-into the litigation, they may be required to sit for depositions and/or testify in court."  Opp. at 34.  As the Court explained at the motion hearing today, it is appropriate to include a statement that class members might "be required to provide information," and so the Court adds such a statement to the Notice.  See Heisler Decl. Ex. B at 2.

Most importantly, Defendants note that the proposed Notice does not include a time limit for class members to opt-in.  Opp. at 34.  Defendants propose a 30 day deadline.  Id.  This time period is too short.  As the Court stated at the motion hearing today, the Notice should give class members 60 days to opt-in.  See Labrie, 2009 WL 723599, at *3 (setting 60

10

day deadline); Perkins, Melzer Decl. Ex. Z (setting 60 day deadline).[6]  Before mailing the Notice, Plaintiffs' counsel is to amend it as indicated to state as the opt-in deadline the specific date sixty calendar days from the date of mailing.

### III.   CONCLUSION

For the foregoing reasons, and for the reasons stated at the motion hearing, the Court GRANTS the Motion for Conditional Collective Action Certification, ORDERS Defendants to disclose to Plaintiffs the names and contact information of class members, and AMENDS the Notice as discussed.  The amended and approved Notice is attached to this Order.  The parties shall have seven months from the date of this Order to complete class and merits discovery.

**IT IS SO ORDERED.**

Dated: November 19, 2010

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE

---

[6] Defendants also object to the Notice's description of the lawsuit. The Notice states only: "The Lawsuit alleges that AT&T/PacBell improperly denied Field Managers overtime wages as required by federal law (the Fair Labor Standards Act (FLSA)). AT&T/PacBell contests all claims that have been asserted and denies any wrongdoing or liability." Id. at 1. This description is both adequate and even-handed.