Janette Wipper (SBN 275264)
jwipper@swhlegal.com
**SANFORD WITTELS & HEISLER, LLP**
555 Montgomery Street, Suite 1206
San Francisco, CA 94111
Phone: (415) 795-2020
Fax: (415) 795-2021

Steven L. Wittels (*pro hac vice*)
swittels@swhlegal.com
**SANFORD WITTELS & HEISLER, LLP**
1350 Avenue of the Americas, 31st Floor
New York, NY 10019
Telephone: (646) 402-5651
Facsimile: (646) 402-5650
*Attorneys for Plaintiffs Joe Lewis Luque,
Herman Richardson, and the Plaintiff Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOE LEWIS LUQUE,** *et al.*, | Case No. 3:09-CV-5885 (CRB)(JCS) |
| **Plaintiffs,** | |
| v. | |
| **AT&T CORP.,** *et al.*, | |
| **Defendants.** | |

**JOINT DECLARATION OF STEVEN L. WITTELS, JEREMY HEISLER AND JANETTE WIPPER IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND RELATED RELIEF**

Steven L. Wittels, Jeremy Heisler, and Janette Wipper, state as follows under the penalty of perjury, pursuant to 28 U.S.C. § 1746:

1. Steven L. Wittels and Jeremy Heisler are founding partners in the New York City office of Sanford Wittels & Heisler, LLP. Janette Wipper is a partner in the San Francisco office of Sanford Wittels & Heisler, LLP. Messrs. Wittels and Heisler and Ms. Wipper are joint Lead Counsel for Plaintiffs and the Class. Based on their active participation and supervision in all material aspects of the

1  prosecution and settlement of this action, they have personal knowledge of the matters set forth in this
2  certification, unless stated otherwise.

3    2. Messrs. Wittels and Heisler and Ms. Wipper make this Declaration in support of Plaintiffs' unopposed motion to (i) preliminarily approve the class-wide settlement of this wage and hour class action; (ii) certify the FLSA and Rule 23 classes for settlement purposes; (iii) enter an order approving the form and content of the Class Notice, Consent and Claim Forms, and Exclusion Form; and (iv) set a date for a final Fairness Hearing.

**I. Lead Counsel's Background**

3. Steven Wittels graduated from The University of California at Berkeley (Boalt Hall) in 1984 with Highest Honors on his class action thesis. Mr. Wittels has been a member in good standing of the New York State bar since 1985, the New Jersey State bar since 1984, and the bar of the Southern and Eastern Districts of New York since 1985 and has been admitted to this Court on a *pro hac vice* basis in this case. Mr. Wittels was one of the lead trial counsel at Sanford Wittels & Heisler which obtained the largest class action jury verdict in the history of employment discrimination for $253 million dollars against Novartis Pharmaceutical Corp in May 2010. Mr. Wittels has served as Class Counsel in dozens of wage and hour, employment and consumer fraud class actions.

4. Jeremy Heisler graduated *magna cum laude* from Brooklyn Law School in 1979 where he was an editor of the Law Review. Mr. Heisler was an Appellate Law Assistant for the Appellate Term, First Department during 1980-1981. Mr. Heisler has been a member in good standing of the New York State bar since January 1980 and the bar of the Southern and Eastern Districts of New York since March 1980. He has been admitted to this Court on a pro hac vice basis in this case.

5. Janette Wipper graduated from Vermont Law School in 1999. Prior to joining Sanford Wittels and Heisler, LLP, Ms. Wipper practiced civil rights impact litigation at several national civil rights organizations. Since joining the firm, Ms. Wipper has served as lead class counsel in numerous wage and hour and employment discrimination class actions. Ms. Wipper has been a member in good standing of the Texas bar since 1999, the District of Columbia bar since 2001, the California bar since 2011 and is admitted to practice before this Court.

6. From its formation in 2004, the law firm of Sanford Wittels & Heisler, LLP ("Class

Counsel") has been significantly involved in civil rights and employment class action litigation. The firm is "AV" rated. Steven Wittels, Jeremy Heisler and Janette Wipper have together served as counsel in numerous class actions around the United States, generating hundreds of millions of dollars in recoveries to class members.

## II. Introduction to the Proposed Settlement and Relief Sought by this Motion

7. Plaintiffs' motion seeks preliminary approval of the Settlement of this wage and hour class action – a settlement that has come after almost three years of litigation, extensive discovery, including more than 50 depositions and review of over one million pages of documents, and two separate mediations before nationally-renowned mediator David Rotman.

8. On April 19, 2012, after a fourteen hour day of mediation, the parties signed a Settlement Term Sheet. The parties then spent several months generating the comprehensive Joint Stipulation of Class Settlement, which is now being submitted for the Court's preliminary approval. The proposed settlement sum provides a monetary benefit to the class of up to $19,407,164, including attorneys' fees and costs to Plaintiffs' counsel and $127,500 in service payments to the Named Plaintiffs and other class members. The class members are assigned a *pro* rata share of the settlement calculated based upon the number of weeks they worked in a class position during the applicable statute of limitations. In order to receive their settlement share, class members are required to complete a Consent and Claim Form that includes a release, a Field Manager position job duties document for current employees, and an agreement to arbitrate future claims.[1] The majority of the class members are already subject to the company's Management Arbitration Agreement or no longer work for the company.

9. In arriving at this highly favorable result, Plaintiffs and Class Counsel recognized the expense and length of a trial and potential appellate process, and further acknowledged that both certification of the class and success on the merits remain highly uncertain. The high degree of risk in further litigation is underscored by an October 2011 jury verdict in favor of a corporate affiliate of the Defendants in *Perkins v. Southern New England Telephone Co.* (D. Conn.) – the first of the three Field

---

[1] A true copy of the Joint Stipulation of Class Settlement Agreement along with its exhibits (the "Settlement" or the "Agreement") is annexed hereto as Exhibit A.

Manager cases to proceed to trial, and a precursor to this action.

10. Pursuant to the terms of the Settlement, Plaintiffs now move for entry of the proposed "Order Preliminarily Approving the Settlement," which accomplishes the following:

    (i) grants preliminary approval of the proposed Settlement;

    (ii) schedules a date for the fairness hearing to consider final approval of the Settlement;

    (iii) approves the form and content of the:

        (a) Notice of Class Action Settlement (Exhibit A to Settlement Agreement); and

        (b) Consent and Claim Forms and Exclusion Form (Exhibits B-F of the Settlement Agreement); and

    (iv) directs the mailing of the Notice of Class Action Settlement, Consent and Claim Forms, and Exclusion Form to the class.

11. In the paragraphs that follow, Plaintiffs will describe the factual background and procedural history of this lawsuit and summarize the terms of the proposed Settlement. Accompanying this Declaration is Plaintiffs' Memorandum of Law in Support of the Plaintiffs' unopposed motion that demonstrates why, under governing decisional law, this Court should preliminarily approve the proposed Settlement and grant the relief requested in the instant motion.

### III. Plaintiffs' Suit And The Litigation History

#### A. Pre-Litigation History and Investigation

12. On June 21, 2007, Class Counsel filed a class and collective action overtime complaint in federal court on behalf of Field Managers in Connecticut captioned *Perkins v. Southern New England Telephone Company,* 3:07-CV-967(JCH) (D. Conn.). The parties thereafter engaged in extensive discovery in the *Perkins* case, which consisted of approximately 60 depositions, the exchange of hundreds of thousands of pages of data and documents, and numerous interrogatories propounded by both sides. In November 2009, on an extensive record, the *Perkins* court certified the case as a collective action under 29 U.S.C. § 216(b) and class action under Fed. R. Civ. P. 23(b)(3). *See Perkins v. S. New Eng. Tel. Co.*, 669 F. Supp.2d 212 (D. Conn. 2009).

13. During the discovery process in *Perkins*, Class Counsel was contacted by Field Managers

across the country wishing to participate in the suit or bring their own separate action. In response to their requests, Class Counsel initiated a comprehensive investigation of the terms and conditions of employment of the Field Managers in California and across the country.

### B. The Complaint and Response From Additional Field Managers

14. On December 16, 2009, after Class Counsel completed its investigation, Plaintiffs Joe Lewis Luque and Herman Richardson filed the class and collective action complaint in this case alleging violations of California and federal wage and hour laws and unfair business practices caused by Defendants' classification of the Field Managers as exempt managers. (Doc. 1) Plaintiffs Luque and Richardson brought the case on behalf of themselves and all "Field Managers employed by PacBell and/or AT&T in the State of California" during the applicable limitations periods.

15. Shortly after filing the Complaint, many additional current and former California Field Managers contacted Class Counsel, requesting information about the case and inquiring whether they were eligible to participate. Class Counsel conducted lengthy intakes with the Field Managers to verify that their experiences were similar to those of the Plaintiffs and that their work histories made them eligible to participate in an FLSA collective action. Through this process, approximately sixty additional current and former Field Managers opted-in to the alleged FLSA collective action in advance of Plaintiffs moving for conditional certification. (Docs. 3-6, 24, 33)

### C. Conditional Certification Briefing and Discovery

16. On May 6, 2010, Plaintiffs moved for conditional certification of a collective action under § 216(b) of the FLSA and simultaneously moved to amend the complaint to name three additional Field Manager plaintiffs: Paul Jenvey, Lee Seronello, and Tom Norton. (Docs. 34, 36) In support of their motion for conditional certification, Plaintiffs submitted detailed declarations from eighteen current and former Field Managers located throughout California. (Doc. 35)

17. Shortly thereafter, on May 14, 2010, Defendants simultaneously moved to continue the hearing date on Plaintiffs' motion for conditional certification so that Defendants would have additional time to take pre-certification discovery and moved to compel discovery responses and depositions from a number of the Field Managers who had opted-in to the collective action. (Docs. 40-43). On May 25, 2010, Plaintiffs filed an opposition to Defendants' motions. (Doc. 46). The parties were ordered to

1  meet and confer in person regarding their disputes and to provide a joint letter outlining any agreements reached and disputes remaining. (Doc. 45).

18. On June 4, 2010, the parties appeared before Magistrate Judge Spero and engaged in a lengthy meet and confer session at the Court where they agreed to a continued hearing date for the conditional certification motion, conditions enabling Plaintiffs to withdraw their motion for leave to file an amended complaint, and the form and substance of most aspects of the pre-conditional certification discovery. On June 11, 2010 the parties submitted a joint letter to Magistrate Judge Spero outlining the agreements reached and issues that remained in dispute. (Doc. 55). On June 14, 2012 the Court addressed the remaining issues in dispute raised in Defendants' motion to compel, granting in part and denying in part the requested discovery. (Doc. 57).

19. Thereafter, the parties engaged in extensive discovery regarding conditional certification, including the exchange of multiple rounds of written discovery and the depositions of eleven opt-in Plaintiffs.

20. On August 27, 2010 Defendants filed their opposition to Plaintiffs' motion for collective action certification and declarations in support of their opposition. (Docs. 81-92). The declarations included a declaration and report from Dr. Deborah Jay presenting the methodology and results of a survey she conducted regarding the job duties and work routines of Field Managers in California. (Doc. 87).

21. On October 15, 2010 Plaintiffs filed their reply memorandum in support of their motion for conditional certification along with supporting documents that included declarations from twenty California Field Managers. (Docs. 105-110).

22. On November 19, 2010 the Court granted conditional certification and approved the issuance of a Notice Form to the collective action class. The Court's decision was communicated to the parties during a motion hearing held before Judge Breyer during which the various details pertaining to the Notice and the subsequent case management plan were addressed. (Doc. 122).

**D. Post-Conditional Certification Discovery**

23. After receiving the Notice Form, well over five hundred additional current and former California Field Managers opted-in to the FLSA collective action. (Docs. 129, 133-142, 144-145).

24. The parties subsequently engaged in extensive fact and expert discovery. After the parties reached agreements regarding the number of opt-ins that would be subject to discovery, Defendants served document requests and interrogatories on over ninety opt-in Plaintiffs. The Plaintiffs also served numerous document requests and interrogatories on Defendants.

25. In response to the discovery requests, the parties exchanged over one million pages of documents and electronic data. Plaintiffs utilized a document management service to process the vast amount of documents and data and to facilitate their review of the information.

26. In addition to serving written discovery requests, Defendants took the depositions of an additional thirty one opt-in Plaintiffs located throughout California. Defendants also deposed Plaintiff's expert Dr. Jon Krosnick regarding his assessment of the survey conducted by Defendant's expert Dr. Deborah Jay.

27. Plaintiffs also served Defendants with a comprehensive 30(b)(6) deposition notice and conducted the depositions of two of Defendants' designees regarding various aspects of the Field Manager position. Plaintiffs deposed Cary Attl, one of defendants' corporate representatives, regarding technician performance metrics. Plaintiffs also deposed Jason Richardson, a Director of Network Services for Pacific Bell, regarding various aspects of the field manager position in the U-Verse organization.

28. The parties also exchanged expert reports. On December 21, 2011, Plaintiffs served Defendants with an expert report by statistician Dr. Richard Drogin that addressed the overtime hours worked by the opt-in Plaintiffs and a calculation of monetary damages to the opt-in Plaintiffs attributable to the alleged overtime violations.

29. On January 18, 2012 Defendants served Plaintiffs with an expert report by Dr. David Lamoreaux that focused on application of the fluctuating workweek to the calculation of monetary damages performed by Dr. Drogin.

30. On February 6, 2012 Plaintiffs served Defendants with an expert rebuttal report by Dr. Jon Krosnick that challenged the methodology used by Dr. Jay in conducting her survey of the job duties and work routines of Field Managers in California

**E.     The Parties' Attempts to Resolve the Case**

7

31. On Sunday, September 18, 2011, less than two weeks before the pending trial in the Connecticut *Perkins* case and in the midst of the extensive discovery being conducted in this case, the parties engaged in mediation before experienced mediator David Rotman. To assist in the mediation, Plaintiffs engaged Dr. Richard Drogin to perform damages projections in this case, the *Perkins* case, and a third case filed by Class Counsel on behalf of Field Managers in nine states in the Southeast captioned *Lawson v. BellSouth Telecommunications, Inc.*, 1:09-cv-3528-JEC (N.D. Ga). Despite a full-day of mediation, the parties were unable to settle this case or either of the two other Field Manager cases.

32. Just before the start of the *Perkins* trial, on September 27, 2011 the parties proceeded to a court-ordered settlement conference before Magistrate Judge William Garfinkel of the District of Connecticut. The settlement conference was also unsuccessful in resolving either the *Perkins* action individually or the three cases together. In October 2011, the *Perkins* case was tried before a jury in the District of Connecticut. The jury returned a verdict for defendant Southern New England Telephone Company (SNET) finding that the field managers were exempt from overtime pay under the FLSA and Connecticut executive exemptions. In December 2011, the District Court denied the *Perkins* Plaintiffs' motion to set aside the verdict, or for a new trial. Plaintiffs have appealed to the Second Circuit.

33. On April 19, 2012, with intensive discovery proceeding in this case; the deadline for Plaintiffs' Rule 23 class certification motion rapidly approaching; with the *Perkins* appeal pending and post-conditional certification discovery beginning in earnest in the *Lawson* case, the parties engaged in a second, full-day mediation before mediator Rotman. After more than fourteen hours of intense arm's-length negotiations facilitated by Mr. Rotman, the parties reached an agreement in principle to settle all three cases and signed a preliminary term sheet. Since the second mediation, the parties have spent substantial additional time ironing out the details of the settlement and analyzing the employment history data of the class members and opt-in plaintiffs eligible to receive an award of settlement benefits in the three cases.

**IV.     Terms of the Settlement Agreement**

34. Defendants will pay up to $19,407,164 to settle this lawsuit. This amount was derived by apportioning the $27,050,000 in settlement funds allocated to the *Luque* and *Lawson* cases based on the number of workweeks eligible to be compensated in the respective lawsuits. Given the substantially

8

greater number of class members in the *Luque* case, and the far longer statute of limitations under California state law, the bulk of the proposed settlement funds – $ 19,407,164– has been allocated to the class in this case. (Settlement, ¶ 27).

35. The class members in this case (as in the *BellSouth* class action) are assigned a *pro* rata share of the settlement calculated based upon the number of weeks they worked in a class position during the applicable statute of limitations. In order to receive their settlement share, class members are required to complete a Consent and Claim Form that includes a release, a Field Manager position job duties document for current employees, and an agreement to arbitrate future claims. The Settlement Agreement, Notice and Consent and Claim Forms provide notification to class members that nothing in the settlement serves as a waiver of future rights. Moreover, the class employment history data and other information provided by Defendants confirm that the majority of the class members are already subject to the company's Management Arbitration Agreement, which was distributed to its employees in 2011, or no longer work for the company.

36. Out of the settlement funds, Plaintiffs may apply for service payments to the named Plaintiffs and other class members who assisted in the litigation in an amount not to exceed $10,000 each. (Settlement Agreement, ¶ 29). As part of this Settlement, Plaintiffs seek $127,500 to be allocated between the named Plaintiffs, proposed additional named plaintiffs, and the other deponents. All of these individuals substantially contributed to the success of the case. The aggregate service payments represent less than one percent of the total monetary relief to the class.

37. For settlement purposes, Defendants have agreed to certification of the class in this case under Federal Rule of Civil Procedure 23(b)(3) and certification of a collective action under section 216(b) of the Fair Labor Standards Act. (Settlement Agreement, ¶ 26)

38. For the reasons explained in the accompanying Memorandum of Law, the parties' proposed settlement falls clearly within the range of possible approval and is highly favorable to the Class; it thus warrants preliminary approval and an opportunity for the class members to receive notice of the settlement.

### V. The Settlement Class Meets All Requirements For Conditional Certification Of A Rule 23(b)(3) Class For Settlement Purposes.

39. The proposed Class is defined as follows:

*All Field Managers (Level One Managers with Field Technicians) employed by PacBell and/or AT&T Corp. in the State of California from December 16, 2005 to May 3, 2012.*

40. The Field Manager class totals 1,420 members and easily suffices to satisfy numerosity.

41. For purposes of settlement only, the parties agree that there exist questions of law or fact common to the entire class. Plaintiffs and the class members allege that Defendants maintain a uniform classification policy together with common policies, practices, and requirements defining and governing the Field Manager position.

42. The claims of the named Plaintiffs are typical of those of the class. Plaintiffs and the class challenge the same policies and practices under the same legal theories, share similar facts, and seek similar relief. Their claims arise from a common course of conduct and are subject to a common defense, namely that the Field Managers qualify as exempt under the executive and administration exemptions.

43. Plaintiffs and their counsel will adequately represent the class' interests. First, Plaintiffs' counsel, Sanford Wittels & Heisler LLP, has extensive experience in successfully prosecuting wage and hour class actions. Second, the named Plaintiffs and other proposed settlement class representatives have wage and hour claims identical to those of the Class they seek to represent; and thus, no conflicts of interest are present.

43. Common issues present in this action predominate over any individual issues. This case centers on Defendants' alleged common employment policies and practices, which the comprehensive settlement seeks to address.

44. A class action is the superior method of adjudicating this action. Litigating the individual claims of well over a thousand class members would be inefficient and cost-prohibitive. Furthermore, especially given the complexity of proof in this case, many class members would be unable to maintain individual litigation and would be prevented from obtaining relief for their injuries.

**VI.  The Conditionally Certified FLSA §216(b) Collective Action Meets All The Requirements For Certification Under The Second Stage Decertification Standard For Settlement Purposes.**

45. The conditionally certified collective action is defined as follows:

10

*All Field Managers (Level One Managers with Field Technicians) employed by PacBell and/or AT&T Corp. in the state of California from December 16, 2006 to May 3, 2012.*

46. While the members of the FLSA collective action are employed in locations statewide, there are no material factual differences for the purposes of their FLSA claims. Plaintiffs and the class members assert that the company subjects all Field Managers statewide to systematic policies, procedures, requirements and controls which render their jobs and level of authority over subordinates essentially uniform.

47. The company's executive and administrative exemption defenses are uniformly applicable to the members of the collective action and do not prevent FLSA certification.

48. Almost six hundred AT&T Corp. and PacBell Field Managers are party plaintiffs in the FLSA action. Without the benefit of collective action, and the pooling of resources, many will be unable to litigate their claims. Furthermore, the judicial system, which could otherwise be beset with hundreds of individual claims, benefits from the efficient resolution of common issues in a single proceeding. This Court has already granted conditional certification under the lenient first-stage test. Since then, the parties have conducted massive discovery and confirmed that this case is suitable for collective certification for settlement purposes. Consequently, the court should preliminarily certify the collective class under the more rigorous "stage-two" certification test for purposes of settlement.

49. Accompanying this Joint Declaration is a Memorandum of Law in Support of Plaintiffs' motion that demonstrates why, under governing law, this Court should preliminarily approve the proposed Settlement and grant the relief requested in the instant motion.

WHEREFORE, Plaintiffs request that the Court:  (i) enter the Order Preliminary Approving Class Settlement, (ii) certify the Rule 23 and FLSA classes for settlement purposes, (iii) approve the form of the Notice, Consent and Claim Forms, and Exclusion Form and (iv) set  a date for a final fairness hearing.

1 We declare under penalty of perjury that the foregoing is true and correct.

2 Executed: New York, New York, San Francisco, California

3 August 24, 2012

                         /s/
Steven L. Wittels (SLW-8110) (*pro hac vice*)

**Sanford Wittels & Heisler, LLP**
1350 Avenue of the Americas, 31st Floor
New York, New York 10019
(646) 402-5651

                         /s/
Jeremy Heisler (*pro hac vice*)

**Sanford Wittels & Heisler, LLP**
1350 Avenue of the Americas, 31st Floor
New York, New York 10019
(646) 402-5651

                         /s/
Janette Wipper (SBN 275264)

**Sanford Wittels & Heisler, LLP**
555 Montgomery Street, Suite 1206
San Francisco, CA 94111
(415) 795-2020

*Lead Counsel for Plaintiffs and the Class*